John H. Grommes and Harry Schoger, Plaintiffs-Appellees, v. Town of Aurora, a Municipal Corporation, and Carl M. Schwartz, as Township Highway Commissioner of the Town of Aurora, Illinois, Defendants-Appellants.

Gen. No. 11,548.

Second District, First Division.

September 4, 1962.

Rehearing denied September 27, 1962.

1

2

David H. Armstrong, of Aurora, for appellants.

J. Robert Murphy, of Aurora, for appellees.

McNEAL, J.

John H. Grommes and Harry Schoger sued the Town of Aurora and its highway commissioner, Carl Schwartz, for damages resulting from a highway improvement which plaintiffs alleged interfered with the drainage of their farm lands. A jury returned a verdict in favor of plaintiff Grommes for $1120 and awarded Schoger the sum of $4000. Judgment was entered on each verdict jointly against the defendants, Town of Aurora and Carl Schwartz, as highway commissioner. Defendants' post-trial motions were denied, and this appeal followed.

On appeal defendants contend that the court erred in admitting improper evidence, that the verdicts were against the manifest weight of the evidence, and that the court erred in giving plaintiffs' instruction 1. Defendants' contention that the Town of Aurora was not a proper party defendant was waived on oral argument.

The evidence discloses that plaintiff Grommes owned 80 acres of land north of a gravel road in Aurora Township, known as Indian Trail. West of Grommes' land a 96-acre tract owned by Arthur Smith was farmed by plaintiff Schoger on a 50/50 share crop basis. The normal drainage of these lands was westward from the Grommes farm, then southward across the tract farmed by Schoger, over or under the township road onto the Fordon farm, and then southerly about two miles to Blackberry Creek. Under the road there was a 24-inch culvert with a 21-inch extension near the center of plaintiffs' lands, and another 10–14 inch pipe near the southwest corner of the Schoger farm.

In the summer of 1955 Aurora Township entered into a contract for improvement of the surface of Indian Trial. Under the contract Commissioner Schwartz was required to do the necessary grading,

4

ditching and placing of drainage structures, and to prepare the base for blacktop. He was unable to locate the pipe at the southwest corner of the Schoger tract, but he replaced the 21-inch extension with a 42-inch tube, and he compacted 12 inches of gravel on the roadway.

Before the road was resurfaced, plaintiffs had never lost a crop due to flooding. At the time of heavy rainfall surface water would run over the road and the fields would be clear of standing water within 24 hours. After an 11-inch rain in October, 1954, Schoger said that water stood in his field about 18 hours, but Schwartz testified to the contrary. He believed that water ran over the road for about three days and stood in the fields for a week.

In the spring of 1958 plaintiffs planted corn in their lands adjacent to Indian Trail. On June 8 it rained 2.57 inches, and on June 13 when the corn was 12 to 16 inches tall, 2.69 inches of rain fell. Water stood in the fields 3 to 5 days and destroyed 10 acres of Grommes' corn and 40 acres of corn in Schoger's field. Plaintiffs replanted the corn and when it was up about a foot, there was .06 inch of rain on July 1, and on July 2 rainfall was 2.16 inches. Water stood in the fields 4 or 5 days and ruined the second planting of corn. Schoger again replanted his field, but Grommes did not. Disking for replanting cost $1 to $1.50 per acre, planting $1 an acre, and seed $1 a bushel for each 5 acres planted. The yield from the undamaged portions of plaintiffs' fields was 100 to 110 bushels per acre, and the support price for corn in 1958 was $1.38 per bushel.

Over defendants' objection plaintiffs were permitted to prove that after the flooding in 1958 the commissioner installed an additional 36-inch culvert near the 24-inch culvert, and also an 18-inch pipe at the southwest corner of Schoger's field. Defendants contend

5

that the admission of evidence relative to the installation of the additional culverts was erroneous because such evidence could have been construed by the jury as an admission of "negligence." The original complaint alleged that defendants negligently executed the grading and installation of the drainage structures so as to increase the elevation of the roadway. However, at the close of the evidence, the complaint was amended so as to eliminate all reference to negligence, defendants' answer was ordered to stand to the complaint as amended, and the jury was instructed without any reference to negligence.

■ ■ As between owners of higher and lower ground, the upper proprietor has an easement to have surface water flow naturally from his land, and the lower proprietor has no right to obstruct the flow of water and pass the water back on the land above. 36 ILP 51, Waters Par 3. In actions for damages resulting from obstructions to the natural flow of surface water, it has been held that instructions pertaining to negligence were properly refused (Toledo, W. & W. Ry. Co. v. Morrison, 71 Ill 616), and that a municipal corporation in the management of its property is held to the same responsibility that attaches to individuals for injury to the property of others. Nevins v. City of Peoria, 41 Ill 502. Accordingly, evidence of the additional culverts was not adduced as an admission of prior negligence. The trial judge concluded that such evidence was proper to show that the 36-inch culvert furnished more adequate drainage, and that the 24-inch culvert was inadequate after the crown of the road had been raised. In our opinion this evidence was properly admitted.

■ Furthermore, defendants are not now in a position to complain of the admission of such evidence. The record discloses that defendants' contour plat of the area in question, offered and admitted as their

6

Exhibit 1, shows a 40-foot 36-inch culvert adjacent to the 24-inch culvert, and a 44-foot 18-inch culvert near the southwest corner of the Schoger tract; and that Commissioner Schwartz testified in his own behalf on direct examination concerning the installation of these additional culverts in November, 1958. Defendants cannot complain of the admission of evidence where they subsequently introduced the same or similar evidence. Thompson v. Weible, 19 Ill App2d 422, 427, 154 NE2d 71; 2 ILP 609, Appeal and Error Par 678.

■ In support of their contention that the verdict is against the manifest weight of the evidence, defendants say that plaintiffs failed to prove that the flooding of their lands was caused by defendants' interference with the natural drainage, and that their proof of damages was speculative and improper. They say that Grommes determined he lost 10 acres of corn "just on his own judgment," and that Schoger also only estimated his loss of 40 acres. Plaintiffs' estimates or judgments were fully corroborated by the testimony of Glenn Moody, a professional farm manager. Also the record contains six aerial photographs of plaintiffs' lands. These photos show the portions of plaintiffs' fields affected by the floods, which approximate areas included in certain contour lines shown on defendants' contour plat. This plat was drawn to a scale of 1 inch equals 100 feet. From these exhibits the jury could have accurately computed the acreages damaged without depending upon plaintiffs' estimates.

■ Defendants argue that the measure of damages for loss of an immature crop is the value at the time of loss, and that Schoger was entitled to only fifty per cent of the loss on the 40 acres he farmed on shares. Where rent is payable in crops, the rent is not due until the end of the term, in the absence of any agreement to the contrary (24 ILP 700, Landlord

7

and Tenant Par 491), and the title to the crop is in the lessee until the lessor's part is separated and allotted to him. Sargent v. Courrier, 66 Ill 245; Babcock v. Mississippi River Power Co., 113 F2d 398. Where a crop is not up, damages should be computed on the basis of the rental value and the cost of the seed and labor, but where a crop is more or less matured, the value of the crop at the time of loss, together with the value of the right of the farmer to mature and gather the crop at harvest time is the proper basis for measuring damages for destruction of crops. Chicago & R. I. R. Co. v. Ward, 16 Ill 521, 530; St. Louis Merchants' Bridge Terminal Ry. Ass'n v. Schultz, 226 Ill 409, 415, 80 NE 879. Defendants made no objection to any of the testimony offered by plaintiffs relative to damages, the average production on unaffected lands, or the support price. On this record, such evidence was properly admitted, and where there are no objections to evidence on damages and no rulings of the trial court on measure of damages presented, the record is insufficient to authorize us to review the question of whether or not that court followed the correct rule relative to measure of damages. Maton Bros. v. Central Illinois Public Service Co., 356 Ill 584, 594, 191 NE 321; Libbra v. Mt. Olive & Staunton Coal Co., 29 Ill App2d 396, 402, 172 NE2d 813.

█ In their argument that the verdict is against the manifest weight of the evidence, defendants suggest that the flooding of plaintiffs' lands was caused by the "leveling" of some of Grommes' land and the inability of the Fordon farm to take excessive drainage because of broken field tile. Whether plaintiffs' damages were caused by such leveling and broken tile or by defendants' road improvements were questions primarily for the jury. Unless we can say that their verdict is manifestly against the weight of the evidence, the verdict must stand.

8

The evidence shows that prior to 1955 the gravel on Indian Trail was 16 to 18 feet in width and in poor condition. Defendants increased the width to 30 feet, added 12 inches of compacted gravel, and covered it with A–3 oil and two cover coats of asphalt. Commissioner Schwartz was unable to find the 10–14 inch pipe near the southwest corner of Schoger's farm, and he concluded that there was "no place for the water to go anyway." Thus, the 10–14 inch outlet was eliminated, the crest of the road increased in elevation about a foot, widened about 12 feet, and a porous gravel surface replaced with a surface less impervious to water. With these facts in evidence, we cannot say that the jury's conclusion that plaintiffs' damages were caused by defendants' road improvements and not by Grommes' leveling and Fordon's broken tile, is against the manifest weight of the evidence.

Appellants also complain that the court erred in giving plaintiffs' instruction 1, as follows:

"The Court instructs the jury that by the law in this state owners of lower ground including highway authorities as well as private property owners have a legal duty to receive all waters coming from higher lands through natural channels. It is further the law in this state that the owners of higher ground have a legal right to accelerate the flow of water in such natural channels by digging ditches, tiling or other means on their own land so as to carry off the water more quickly, provided that such work is required by natural requirements of good farming, and further provided that in doing such work the owner of the higher ground does not divert water onto the lower land that never would have reached it in a natural state. Accordingly the owner of lower land, including highway authorities, do not have a right to build any arti-

9

ficial structure that will interfere with the natural drainage of the higher land."

Appellants' abstract shows that the court gave nine instructions, but it fails to show at whose instance any of these instructions was given. The abstract is the pleading of the party in a court of review, and what is sought to be reviewed must be contained in that pleading. Richman Chemical Co. v. Lowenthal, 16 Ill App2d 568, 571, 149 NE2d 351. All instructions must be abstracted and the party tendering them identified before they are available for review. People v. Woodruff, 9 Ill2d 429, 440, 137 NE2d 809; Goodman v. Motor Products Corp., 22 Ill App2d 378, 387, 161 NE2d 31; 2 ILP 451, Appeal and Error Par 488. A court of review is not required to go to the record to reverse, although it may search the record in order to affirm. Rubinstein v. Fred A. Coleman Co., 22 Ill App2d 116, 121, 159 NE2d 379.

In exploring the record to ascertain which party tendered the quoted instruction, we find that the copies of the instructions tendered the court have not been "incorporated in the record on appeal," as provided by section 67(2) of the Civil Practice Act. Instead, at pages 43–53 of the record, which were not abstracted, we find that the clerk has copied the Given Instructions filed in his office, and at pages 316–324 of the report of proceedings we find that the reporter has also copied into the transcript the instructions as abstracted. The report of proceedings shows that of the nine instructions given by the court, the first six were requested by plaintiffs and the last three were tendered by defendants.

According to the abstract and the report, plaintiffs' instruction 1 refers to the issues under the pleading, and the quoted instruction was plaintiffs' instruction 2. At the conference on instructions, defendants' counsel said: "I object to No. 1 in that it is an abstract

instruction. It infers that the highway authorities in this case are the owners of the lower ground, which I don't think is supported by the evidence. . . . This instruction seems to be dealing with the duty of the land lying to the south in this case, and I don't believe it is material what the duty of the Fordon farm owners to the south were. I think it is misleading."

Notwithstanding appellants' failure to show by their abstract which party tendered the instructions given or that their objections at the conference refer to the quoted instruction, we have examined all instructions shown by the abstract. Instructions 1 and 5 clearly predicate plaintiffs' claims upon defendants' interference with the natural drainage of plaintiffs' lands caused by blacktopping and raising the elevation of the roadway, and defendants' instruction 7 directed the jury to find them not guilty unless the jury believed by a preponderance that the improvement of Indian Trail impeded and obstructed the natural flow of surface water from plaintiffs' lands. In the light of these other given instructions the jury could not have inferred that defendants were charged with ownership of or any duty in connection with the Fordon farm south of the road. The trial court committed no error in overruling defendants' objections to the quoted instruction.

In our opinion the jury could not have been misled by the instruction complained of, defendants were not prejudiced by the trial court's admission of evidence, and the verdicts of the jury were not against the manifest weight of the evidence. Accordingly the judgment of the Circuit Court of Kane County is affirmed.

Affirmed.

DOVE, P. J. and SMITH, J., concur.