CHARLES W. RICHARDSON *v.* CHRISTOPHER SCROGGHAM

[No. 1-973A157. Filed February 20, 1974.]

*Maurice A. David, Sharpnack, Bigley & David,* of Columbus, for appellant.

*Jerry J. Lux, Terry, Robison & Graebe,* of Shelbyville, for appellee.

LOWDERMILK, J.—Plaintiff-appellee commenced this action by filing his complaint in two legal paragraphs for damages for the conversion of personal property. Each paragraph prayed compensatory damages and also an additional sum for punitive damages. These allegations of each legal paragraph of the complaint were denied by defendant-appellant's answer thereto.

Plaintiff-appellee's mother married Jacob Richardson, father of defendant-appellant, and was married to him about five years before his death. A part of their married life was spent on the senior Richardson's farm but before he died it was necessary to leave the farm and they moved to Indianapolis.

At the time of the marriage the senior Richardson held a life estate in his farm, consisting of about 125 acres in Shelby County, Indiana, and the fee was owned by his son, defendant-appellant herein.

Plaintiff-appellee worked at divers jobs and operated the senior Richardson's farm on a share crop basis. During this time the senior Richardson resided on the farm and ran about 85 head of Angus cattle. The share crop arrangements were parol and from year to year, but functioned with no difficulty. When the senior Richardson left the farm and moved to Indianapolis he sold all his cattle and, later, on September 30, 1970, entered into a written contract with plaintiff-appellee, renting him the farm on a cash annual basis of $4,375.00 and granting him the privilege of residing in the residence on the farm.

There were three fields on the east side of the county highway with the north field containing 21 acres, the middle

field containing 26 acres, and the south field containing 33 acres.

The evidence most favorable to plaintiff-appellee was that in 1969 the north field was in a hay crop and that plaintiff-appellee supplemented the growing hay crop by twice discing the north field and sowing rye therein. He followed this in the spring of 1970 by drilling oats, timothy and alfalfa in the original hay and rye cover crop. In August of 1970 he seeded by broadcasting the middle, a pasture and hay field, with oats, a small amount of alfalfa seed and about two bushels of timothy seed and followed this by discing the seed into the ground in order that it might sprout, take root and grow. This work was done under the parol rental agreement.

On October 24, 1970, the senior Richardson died. Defendant-appellant, on the day of his father's death, went immediately to the farm where he found plaintiff-appellee starting to plow the middle field. At that time words were exchanged about title and ownership and the right of plaintiff-appellee to continue on the farm. Defendant-appellant threatened Mr. Scroggham with prosecution for trespass if he did not leave, or if he ever came back to the farm. Plaintiff-appellee at that time had made less than one through with his plowing. He immediately ceased plowing and began removal of his tools from the farm in compliance with the orders from defendant-appellant.

In June, 1971, plaintiff-appellee returned to the farm to harvest his hay crop and was mowing in the north field when the sheriff of Shelby County came out and ordered him to cease mowing. The sheriff was shown the written lease by plaintiff-appellee and permitted him to continue with his work. The next day the north field was mowed except for a very thin strip in the center when two Shelby County deputy sheriffs came out, arrested plaintiff-appellee for trespass and took him before a Justice of the Peace, who, after some sort of hearing, discharged him.

Plaintiff-appellee made no further attempt to save his hay crop. In the meantime, it rained and damaged the new-mown hay. However, the hay crop was later raked and it was baled by Earl Quick, who testified that on the first cutting there was "1,266 bales of rye, weeds and clover and on the second cutting there were 235 bales of clover; there were no oats." (Witnesses referred to the hay at times as "alfalfa" and at times as "clover.") Defendant-appellant testified as to the same number of bales as did Mr. Quick, but said the value per bale on the first cutting was thirty-five cents and on the second cutting there were 235 bales at a value of sixty-five cents per bale.

There was further evidence of a Mr. Settles that the first cutting of the north field had it not been damaged, would have been 85 bales per acre (21 acres) times eighty-five cents per bale, totaling $1,517.25. Mr. Settles' figure of $1,517.25 plus defendant-appellant's estimate on the second crop would make a total loss to the plaintiff-appellee on the north field of $1,658.25.

Plaintiff-appellee estimated that the middle field of 26 acres would have produced 1,250 bales of hay at an estimated value of $1.00 a bale. Defendant-appellant would not be entitled to any deduction for labor which he might be required to bestow to harvest the crop had it not been plowed under. *Ayres* v. *Hobbs, infra.*

Photographic exhibits of the north and middle fields which were admitted into evidence and made a part of the record were taken in March just before defendant-appellant plowed under the hay crop on the middle field. Considering the evidence most favorable to the appellee, these pictures portrayed the two fields with enough legume crop thereon that the jury may well have reasonably believed that the legume or hay crop on the middle field would have been capable of producing the amount of hay, had it not been plowed under, that the plaintiff-appellee testified it would have made.

The jury returned its verdict for the plaintiff-appellee for the sum of $2,500 compensatory damages and the additional sum of $7,000 punitive damages.

Motion to correct errors was timely filed and overruled.

We shall treat the specifications of error on which defendant-appellant relies separately without setting out a copy of the motion.

Specification one was that the compensatory damages awarded the plaintiff-appellee were excessive.

We must first determine whether or not there was a rental contract and if so was the plaintiff-appellee entitled to re-enter the land and recover his crop which did not mature in the year in which it was planted when he had leased the land from the life tenant only.

Plaintiff-appellee sowed seed for his hay crop under a year to year parol lease between the life tenant and himself. It was under this lease he was attempting to harvest the hay crop which was lawfully his. The written lease entered into between the life tenant and plaintiff-appellee on September 30, 1970, did not control and terminated at the time of the senior Richardson's death on October 24, 1970, and is immaterial to the issues of this case.

In the case of *Vawter v. Frame* (1911), 48 Ind. App. 481, 483, 96 N.E. 35, the court, in speaking on this subject said:

> "But growing annual crops belonging to a life tenant are a part of his personal property, and, at his death, go to his estate. . . ."

The court said, in *Lowrey et al.* v. *Reef* (1890), 1 Ind. App. 244, 249, 27 N.E. 626, that:

> ". . . There is no doubt that as Mrs. Shafer owned only a life-estate in the lands, her decease, on the 21st day of November, 1887, put an end to appellee's right to possession of the lands, and that he had no rights under the lease except to the growing crops on the lands at the time of the death of the lessor. *The wheat appellee had sowed in the fall of 1887, and was growing at the time Mrs. Shafer*

*died, belonged to the appellee. Dorsett* v. *Gray,* 98 Ind. 273. The rents which accrued previous to the death of the lessor are collectible by the personal representative, but those that accrued afterwards by the heir. . . ." (Our emphasis.)

Under the holdings of the cases cited and relied upon by us in this opinion, plaintiff-appellee had an absolute right to go back in the year of the maturity of those crops and harvest them, although his landlord, the senior Richardson, only had a life estate at the time he entered into the contract and had died before the crop could be harvested. Defendant-appellant wrongfully removed Scroggham from the north and middle fields, wrongfully refused to permit him to have his hay crop in 1971, wrongfully plowed under the hay crop in the middle field in 1971, and wrongfully had him arrested for trespass.

Defendant-appellant contends that damages for conversion of property must be determined at the exact time of conversion and relies on the case of *Ayres* v. *Hobbs* (1907), 41 Ind. App. 576, 580, 84 N.E. 554, which holds:

". . . 'the measure of damages was the value of the property at the time it was converted to the appellant's use without any deduction for labor rendered or bestowed upon it by the wrongdoer.' . . ."

In *Ayres* the landlord unlawfully converted one-half of a field of growing wheat to his own use by cutting and harvesting the same after it had matured. We distinguish *Ayres* v. *Hobbs* from the case at bar on the fact that in the *Ayres* case at the time of the conversion the wheat was matured. In the case at bar the north field of hay was matured and it would be no exception to the *Ayres* case. However, the middle field was unlawfully converted by defendant-appellant in March even before the legume and hay crop had started its growth in the spring, as evidenced by the photographs taken of the respective fields and introduced into evidence.

We are of the opinion that the measure of damages in the case at bar overcomes the problem of speculative damages for

the reason that the jury had evidence before it as to the seeding and discing in of seed in the middle field in August of 1970, and the photographic evidence of the condition of the hay crop in the middle field as compared to the hay crop in the north field in early March of 1971. The jury also had evidence as to the amount, kind and production of hay that was produced in the north field in June of 1971 and as the middle field was contiguous to the north field the jury had a right, at least, to infer that there were equally as good growing and weather conditions and that the land was about of the same fertility to make a hay crop in the middle field as in the north field, which would take the matter of the number of bales of hay which the middle field would have produced as was testified to by Mr. Scroggham out of the field and range of speculation.

If the jury believed Mr. Scroggham's evidence, and apparently they did, that the middle field would have produced $1,250 worth of hay, then they had the right to fix the damages, if they saw fit, at that amount.

The case of *The Chicago and Erie Railroad Company* v. *Barnes* (1894), 10 Ind. App. 460, 463, 38 N.E. 428, holds:

"Where the subject of controversy is the value of a growing crop, considerably advanced toward maturity, there is no error in refusing to permit proof of the cost of putting in and cultivating the crop up to that point. The value of a particular crop depends not upon its cost of production, but upon its present condition and prospects. . . ."

The *Barnes* case, *supra,* gives at least an indication that the value of growing crops that have been converted may include estimates of the value of the crop when it is harvested rather than being limited to the value of the crop at the time of the conversion. In the case of *Avan* v. *Frey* (1879), 69 Ind. 91, 93, our Supreme Court stated that evidence was admissible to prove the amount and value of crops which would have been raised on land as a basis for laying the groundwork for damages.

The Illinois rule in relation to growing crops which have been converted and the value of the same is enlightening to this issue. The Appellate Court of Illinois, in the case of *Johnson* v. *Sleaford* (1963), 188 N.E.2d 230, 235, held as follows:

> ". . . For immediate use as such the immature crops as such may have had, theoretically, no value at all, but the proper method of establishing the market value of the crops as they were when destroyed, together with the value of the right which the owners had to mature the crops and harvest them at the proper time, . . . That value was necessarily a matter of estimate or conclusion of the mind of the witnesses to be arrived at from all the material facts which would affect it, including the quality of the land on which the crops were growing, its fertility, and productivity, . . . and including the probability or improbability that a particular crop would mature on a particular tract, . . ." See, also, *Grommes* v. *Town of Aurora* (1962), 185 N.E.2d 3; *Economy Light & Power Co.* v. *Cutting* (1893), 49 Ill. App. 422; *Chicago and Rock Island R.R. Co.* v. *Ward* (1854), 16 Ill. 522.

It is our opinion that the rule as set out in *Johnson, supra,* is well reasoned and consonant with the principles of equity and justice. We find no conflict with the present law as it exists in Indiana and we now adopt the rule on the measure of damages on destruction or conversion of growing crops as that declared in *Johnson* v. *Sleaford, supra.*

We find no error in the amount of compensatory damages and it is our opinion that said damages were supported by sufficient evidence and were not excessive.

The next specification set forth in the motion to correct errors is that the punitive damages awarded are excessive. In his brief defendant-appellant has argued for the first time that punitive damages would not lie in this action.

Defendant-appellant made no written objections to any tendered instruction or any instruction given by the court on its own motion.

Rule TR. 51(C) provides that if no objections are made before an instruction is given to the jury before it retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection, that the party waives any right to object and cannot raise objections to instructions for the first time on appeal. This court is without jurisdiction to consider questions raised for the first time on appeal. *City of Gary* v. *Archer* (1973), 157 Ind. App. 477, 300 N.E.2d 687. We are of the opinion that the giving of instructions on punitive damages was proper.

Defendant-appellant is not objecting to the instructions given; he is objecting to the excessive award of punitive damages which we believe may be proper even though he did not object to the giving of instructions on punitive damages.

The evidence most favorable to the appellee discloses that the actions of the appellant in converting the crops of the appellee were done intentionally, knowingly, and with malice. There is evidence that the appellant told another witness that he would "burn" the appellee if he tried to gather his hay crop. The evidence also discloses that the appellant knew, or should have known, of the existence of the crops; that the tenant of the owner of a life estate had the legal right to re-enter the land and harvest growing crops planted or seeded by the tenant which matured after the death of the life tenant. The amount of punitive damages awarded are not so excessive as to shock the conscience and are within the bounds that this court has heretofore approved. See *Snider* v. *Lewis* (1971), 150 Ind. App. 30, 276 N.E.2d 160, in which case the award for compensatory damages was $15,000 and the award for punitive damages was $75,000.

No error was made in the award of the punitive damages.

The next specifications of error are the insufficiency of the evidence and the verdict was contrary to law.

Defendant-appellant contends that because some farmers testified that plaintiff-appellee did not do his farming opera-

tions in the usual and husbandlike manner that he failed in his proof as to what the crops were likely to produce. There was evidence of farm neighbors as to the proper way to sow legumes and when and as to the amount of productivity of the fields in question. There was evidence of the production and actual amount of hay in the north field in 1971 and the prospects for the 1971 hay crop in the middle field plowed under by the defendant-appellant. There was other evidence material to the issues which the jury had a right to believe and apparently did believe and from which it could arrive at its verdict in this case. We cannot and do not weigh the evidence.

From the above reasons we are of the opinion that there was adequate evidence to sustain the judgment and award of the jury, and the same was not contrary to law.

Judgment affirmed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 307 N.E.2d 80.