(615 P.2d 791)

No. 50,672

ANITA HORNE, AVIS MINGER and DALTON HOLLAND, *Appellees,* v. FRANCIS MARION OLLER, a/k/a MARION OLLER, *Appellant.*

Opinion filed August 15, 1980.

*Larry T. Solomon* of Wunsch, Wunsch & Gaumer, of Kingman, for appellant.

*Theodore C. Geisert* and *Kenneth R. Heer,* of Geisert, Heer & McKenna, of Kingman, for appellees.

Before REES, P.J., SPENCER and MEYER, JJ.

MEYER, J.: Anita Horne, Avis Minger and Dalton Holland (appellees), filed suit to recover the sum of $710.00 which they claimed was due them as cash rent for pasture and feed ground for the period of August 1, 1976, through July 31, 1977. Francis Marion Oller (appellant) claimed that by virtue of the weather conditions preventing removal of the crop prior to August 1, 1977, and appellees' refusal to let him remove the crop on said ground after that date, the crop enured to the benefit of the appellees and they had a duty to harvest and sell the crop in mitigation of their damages. The trial court granted summary judgment in favor of the appellees, holding that "[t]his is not a damage suit and it is my opinion that 'mitigation of damages' has no application to the facts in this case."

As background, it is noted that on September 16, 1975, appellees and appellant entered into a written lease covering certain farm real estate in Kingman County, Kansas. The lease was for a term commencing August 1, 1975, and ending July 31, 1976. Appellant "held over" for the 1976-1977 lease year. On March 18, 1977, appellees served written notice on appellant that said farm lease was terminated as of July 31, 1977, and that appellant would be required to vacate the premises.

Subsequent to receiving the notice to terminate, and in early May, 1977, appellant planted a crop of Sudan grass. Appellant claims that in early July, 1977, he cut the Sudan grass, but due to moisture he was unable to get the Sudan grass stacked, baled, and removed from the premises by July 31, 1977. In early July, 1977, appellant asked one of the appellees whether he could remove the Sudan grass after July 31, 1977, if the moisture prevented the removal prior to that date. The appellee to whom appellant spoke emphasized that he must be off the premises by July 31, 1977, and that he could not reenter. Appellant contends that appellees became aware that he had vacated the premises, leaving the Sudan grass thereon, "sometime after August 1, 1977." Appellant claims that appellees did not attempt to contact him after July 31, 1977, with regard to the crop. Appellant alleges that the Sudan grass which had matured and which had been cut by him had been allowed to continue to lie on the ground and that same deteriorated.

The lease was on a crop-share basis as to wheat and milo. There is no dispute as to this portion of the lease. Appellant was to pay $710.00 cash rent for the pasture and feed ground and this part of the lease gave rise to this case.

The first problem with which we are presented is whether crops which are matured or severed from the land belong to a tenant or to a landlord on expiration of the tenancy.

The general rule is that a tenant renting on a crop-share basis is not entitled to a crop sown but not maturing before the expiration of his lease. See *Stoppel v. Mastin,* 220 Kan. 667, 671, 556 P.2d 394 (1976). The reason for the rule is that it is foolish for a tenant to plant when he knows that his lease will end before the time of harvest. See *Bank v. Jesch,* 99 Kan. 797, 163 Pac. 150 (1917); *Fox v. Flick,* 166 Kan. 533, 203 P.2d 186 (1949). Sudan grass, however, matures quickly and the Sudan grass planted by appellant was apparently mature in early July. It does not appear to have been questioned in this case that Sudan grass normally could be planted, cut and removed within the possessory period of the lease.

Here, the question is whether the landlord is liable to the tenant for not permitting him to come upon the premises after the expiration of his lease to remove crops which have been severed and are lying on the ground.

At 21 Am. Jur. 2d, Crops § 24, p. 607, we find the following:

"As between the landlord and tenant on the expiration of the lease, crops which have matured are not considered 'growing crops,' and the tenant has the right to such matured crops although they are still unsevered from the land. He also has a reasonable time in which to remove them on the principle that after the termination of a lease the tenant has a reasonable time in which to take away his personal effects, and even though the tenant fails to remove the matured crops, title to them does not vest in the landlord by reason of such failure."

The leading case in this regard was *Opperman v. Littlejohn,* 98 Miss. 636, 54 So. 77 (1911). In *Opperman,* the tenancy terminated and the tenant went back to the land and severed the crop over the objection of the landlord. The landlord ordered the tenant off the land and took the crop into his possession. The tenant sued in replevin to recover the crop and the court awarded the crop damages to tenant.

The court stated:

" 'As between the landlord and the tenant, the annual crop raised on leased property constitutes no part of the freehold, and, when matured or severed from the soil during the term of the tenant's lease, it becomes his personal property . . . .'

". . . Where the crop is matured, it belongs to the tenant under his contract with the landlord, and he must be given reasonable opportunity to harvest same. If conditions prevent the tenant from harvesting his crop on the very date that the lease expires, the matured crop is none the less his crop, and universal custom, justice, and law demand that he have reasonable opportunity to reap the fruits of his honest toil." 98 Miss. at 646-7.

In the case at bar, the evidence indicates that the Sudan grass was mature and severed on July 31, but the tenant was unable to remove the grass due to wet weather. It, therefore, was his personal property and he had the right to reenter the property in order to remove the crop.

The question remains, however, as to what theory, if any, would permit appellant to recover.

The courts have recognized a tort of conversion and a tenant may recover damages where the landlord prevents the tenant from removing crops rightfully his on termination of the tenancy. In *Smith v. Boyle,* 66 Neb. 823, 92 N. W. 1018 (1902), the court held that straw left on the ground after cutting wheat was the tenant's personal property, and after termination of his lease he had a right to reenter and remove the same within a reasonable time. The landlord saw the tenant attempting to remove the straw and refused him permission to reenter the premises. The court

held that there was actionable conversion, stating:

"[W]here the landlord forbids an outgoing tenant to remove articles of personal property belonging to the tenant, he may treat such conduct as a conversion by the landlord and sue for their value." 66 Neb. at 825.

In a more recent case, the rule was applied to support a cause of action in conversion where a crop of corn was harvested and converted into silage and stored. The action in damages was sustained because the landlord prevented the tenant from gaining access to the place to get feed. See *Fleming v. Goggins,* 375 P.2d 474 (Wyo. 1962).

In *Schulz v. Hoffman,* 254 Iowa 868, 118 N.W.2d 532 (1962), the cause in conversion was remanded with a jury question as to whether the dispute in excluding the tenant was over the means of harvesting corn rather than the prevention of his harvesting the corn.

The theory of unjust enrichment has been used to recover the value of crops which are harvested by the landlord even where the tenant was not wrongfully excluded from the property. In *Shadle v. Borrusch,* 255 Iowa 1122, 125 N.W.2d 507 (1963), a landlord enjoined a tenant from picking corn in any other manner than agreed. The agreement was that the tenant would harvest the landlord's share first as designated. The tenant began picking his own corn first and was enjoined. The landlord after about two months harvested the corn left standing. The tenant counter-claimed for issuance of wrongful injunction. The trial court entered judgment for the tenant on his counterclaim and the landlord appealed. The appellate court held that tenant was entitled to his share of corn which the landlord had picked on the theory of unjust enrichment, stating that the landlord had re-tained money or benefits which in justice and equity belonged to another.

The appellate court, however, found that the tenant had not stated a cause of action for wrongful injunction because the restraining order did not enjoin the tenant from picking the corn then standing except in a manner different from that to which the parties agreed in writings. Notwithstanding the injunction, de-fendant could have proceeded to pick and crib the landlord's corn first in the manner agreed upon. The court concluded that the tenant's remedy was to recover only for the corn which the landlord had gathered and from which he had reaped a benefit.

The court declined recovery for that portion of the corn which was left standing on the termination date, but was not harvested by the landlord because of loss due to the weather during the two months which elapsed between the termination date and the harvesting of the corn by the landlord.

In our case, appellant would likewise be precluded from recovering on an unjust enrichment theory because the landlord did not receive any benefit from the Sudan grass left in the field. He would be limited to recovering only if he could prove that the landlord converted the crops.

The elements of conversion have been stated as follows:

"A conversion is an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another. The intent required is simply to use or dispose of the goods, and knowledge or ignorance of the actor as to their ownership has no influence in deciding the question of conversion. [Citation omitted.]

.  .  .  .

"[T]he measure of damages for conversion of personal property is the fair and reasonable market value of the property converted at the time of the conversion." *Nelson v. Hy-Grade Construction & Materials, Inc.*, 215 Kan. 631, 634-5, 527 P.2d 1059 (1974).

In the case at bar, the trial court relied upon the legal concept that the farm tenant had no rights to the crop in granting the motion for summary judgment to appellees. He relied on this concept to dispose of the tenant's claim that he was excluded by the landlords from going onto the property to remove the Sudan grass, stating, "[E]ven if this happened, I am unable to see how it changes the matter."

This was error in view of the law stated above. The tenant alleged in his answer that he was not obligated to pay the rent because the landlords had refused to let the appellant reenter and harvest said feed. Appellant has pled facts, which if supported by evidence, might show an unauthorized exercise of the right of ownership over the personal chattels of another and allow appellant to recover.

Although at this point appellant may amend his pleading to state the proper theory of recovery only by leave of court or by written consent of the adverse party, "leave shall be freely given when justice so requires." K.S.A. 60-215(a).

We conclude that where a tenant plants a crop which matures before his lease expires and where he had every reason to believe

when he planted that same could be harvested at or prior to the termination of his lease, he is entitled to such crop. If such crop in fact matures and is severed before the end of his lease, then such tenant is entitled to the crop, and where he is unable to harvest the same before the termination of his lease due to climatic conditions, then he must be afforded reasonable opportunity to take possession of such crop, provided he does so as soon as is reasonably possible after the termination of his lease.

We conclude that this case must be remanded to the district court for proceedings compatible with this decision. The trial court must determine whether appellant could have removed the Sudan grass by or before July 31, 1977, and if not, if appellant was prevented from removing same as soon as possible after July 31, 1977.

It is apparent to us that the district court did not consider the facts regarding appellant's exclusion from his crops because of the court's conclusion that the crops left on the premises by the tenant when the tenant left the premises on July 31, 1977, unequivocally belonged to the landlord. In remanding the case, we do not undertake to say what the results should be in the trial court, but conclude that summary judgment in this matter was improper.

Reversed and remanded.

REES, J., dissenting. I dissent from the result.