Gerald P. and Patricia ANDERSEN,
Plaintiffs-Appellees,

v.

BUREAU OF INDIAN AFFAIRS,
Defendants-Appellants.

No. 83–2335.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 10, 1984.

Decided July 5, 1985.

James M. Burns, District Judge, sitting by designation, dissented.

William P. French, Norton, Burke, Berry & French, Phoenix, Ariz., for plaintiffs-appellees.

Wendy Jacobs, Lands Div., Dept. of Justice, Washington, D.C., for defendants-appellants.

Before SNEED and FLETCHER, Circuit Judges, and BURNS,* District Judge.

FLETCHER, Circuit Judge:

The Bureau of Indian Affairs appeals from a summary judgment awarding it $35,938 of $1,000,000 in proceeds from crops planted and harvested on tribal land by a former lessee after termination of his lease, and awarding the balance of the proceeds to the lessee. We reverse.

## I. FACTS

In 1976, the Andersens and the Gila River Indian Community (the tribe) entered into an eight-year lease, which authorized the Andersens to farm a tract of tribal land in return for periodic rental payments and specified developments and improvements. The lease was approved by the Bureau of Indian Affairs (BIA).

In late 1977, the BIA determined that the Andersens had failed to comply with their obligations and notified them that unless they performed, the lease would be terminated on February 28, 1978. Despite the notice, in February, 1978, the Andersens planted a crop of cotton on the land.

In March 1978, the BIA notified the Andersens that they had still not complied with the terms of the lease, and therefore, the lease was terminated effective February 28, 1978. The Andersens did not appeal this decision. They also did not vacate the land, as the BIA had requested.

The BIA sought a restraining order to prevent the Andersens from harvesting the 1978 crop. Before the court ruled on the petition, the parties agreed that the Andersens should harvest the crop and that the

processor of the cotton should retain $50,000 of the proceeds from the harvest, to be released by court order or agreement between the Andersens and the BIA.

In November 1978, the Andersens filed suit for reinstatement of the lease. The BIA answered and counterclaimed for trespass, ejectment, breach of contract, and conversion. During February 1979, the Andersens again planted a cotton crop on the property. Again, the parties stipulated that the Andersens would harvest the crop and deposit the proceeds in the court registry. The agreement provided that the severance of the crops would "not modify the rights of any interested party to the crops previously harvested or to be harvested pursuant to this stipulation."

In September 1979, the district court dismissed the Andersens' complaint on the ground that the court lacked jurisdiction since they had failed to exhaust their administrative remedies. The Andersens still did not vacate the land, but, instead, planted a third cotton crop on the land in the early spring of 1980.

In June 1980, the BIA moved for a partial summary judgment of ejectment. The district court granted the motion, entered a judgment of ejectment, and ordered the Andersens to vacate the premises. The court held that the Andersens had been in trespass since February 28, 1978, the effective date of the BIA's termination of the lease.

The Andersens appealed both the dismissal of their complaint and the judgment to this court. We granted a stay of the district court's judgment until the 1980 crop could be harvested, with directions that the Andersens were to deposit the proceeds from the harvest in the district court registry. Subsequently, we affirmed the district court's dismissal of the complaint and the judgment of ejectment. *Andersen v. Cumming*, No. 80–5573 (unpublished memorandum, 9th Cir. July 29, 1981).

---

* Hon. James M. Burns, Chief United States District Judge for the District of Oregon, sitting by designation.

After remand, both parties moved for summary judgment to collect the $1,000,-000 in proceeds that had accumulated from the 1978, 1979, and 1980 harvests. The district court concluded that the tribe was entitled to recover the cash rental payments required under the lease and the value of any developments or improvements the Andersens were to have made during their possession of the land. The court awarded $35,938 to the BIA, plus 12% interest for the period from January 1, 1983, to the date of judgment. The court then entered final judgment, and the BIA timely appealed.

## II. DISCUSSION

We review a grant of summary judgment de novo, viewing the evidence in a light most favorable to the non-moving party. *Compton v. Ide*, 732 F.2d 1429, 1434 (9th Cir.1984). We must determine whether the district court correctly applied the substantive law. *Deukmejian v. United States Postal Service*, 734 F.2d 460, 462 (9th Cir. 1984).

The district court based its decision on two Arizona statutes. The first, Ariz.Rev. Stat.Ann. § 12–1271 (West 1982), permits a landowner to bring an action to "recover rent, or a fair and reasonable satisfaction for the use and occupation of real property ... when a tenant remains in possession after termination of his right of possession." The second, Ariz.Rev.Stat.Ann. § 12–1257, provides: "A tenant in possession in good faith, under a lease or license from another, is not liable beyond the rent in arrears at the time the action is brought, and that which afterward accrues during continuance of his possession."

The district court concluded that the tribe was *entitled* to recover rent in arrears under section 12–1271 and was *limit-*ed to the recovery of the rent under section 12–1257.

The court found support for its conclusion in a related section of the code, Ariz. Rev.Stat.Ann. § 12–1258. Section 12–1258 permits a tenant found to be possessing property wrongfully to obtain a stay of ejectment if he shows that a crop is growing on the premises and executes a bond to protect the landlord's interests.[1]

The parties have cited no cases interpreting these provisions, and we have found none. Thus, our task is to use our best judgment to determine how Arizona's highest court would interpret these statutes. *See Fiorito Brothers, Inc. v. Fruehauf Corp.*, 747 F.2d 1309, 1314 (9th Cir.1984). Applying de novo review, *In re McLinn*, 739 F.2d 1395, 1403 (9th Cir.1984) (en banc), we agree with much of the district court's interpretation, but we reject its conclusion.

■ The district court concluded that section 12–1257 limited the BIA's recovery because the Andersens "held over ... in good faith[,] believ[ing] they had a right to remain in possession of the land." This finding is simply not supported in the record.

The Andersens may have believed in good faith that they were not in breach when they received the December 27, 1977, notice to perform or terminate. But we do not see how it can be said that the Andersens held over in good faith after they failed to appeal the determination that they were in default. The Andersens were told that they had thirty days to appeal the BIA's determination or sixty days to remedy the deficiencies noted in the letter. The Andersens do not contend that they attempted to remedy the deficiencies, nor did they appeal. Instead, they planted the 1978 cotton crop.

---

1. Section 12–1258 provides:

   If defendant alleges that he has a crop sowed, planted or growing on the premises, the judge or jury, finding for plaintiff, and also finding that fact, shall further find the value of the premises from the date of the trial until February 1 next succeeding. No execution for possession shall be issued until

   that time if the defendant executes, with surety to be approved by the clerk of the court, a bond in double such amount to plaintiff, conditioned to pay at such date the sum so assessed, and if not paid at maturity the court shall enter judgment upon the bond.

   Ariz.Rev.Stat.Ann. § 12–1258 (West 1982).

When this case previously was before us, the Andersens contended that the December 27 letter was ambiguous concerning the time for an appeal. We rejected their argument, stating: "We are not persuaded that any reasonable person would construe the December 27, 1977, letter as extending the time to appeal the decision that the lease had been breached." The Andersens knew or should have known by the letter's terms that the lease would terminate on February 28, 1978, unless they took some action, and their inaction defeats any contention that they acted in good faith.

The Andersens' subsequent conduct certainly cannot be taken as establishing good faith. They entered into a stipulation with the BIA, allowing them to stay on the land, but the stipulation contained an express reservation of rights. The Andersens stayed on the land knowing that the lease had been terminated. In fact, the district court found at the time it denied the Andersens' motion to stay the ejectment order pending appeal:

> The [Andersens] knew that they would not be able to continue farming the land in question, but they nevertheless planted a cotton crop [referring to the 1980 crop]. Thus, [the Andersens] placed themselves in a position where they knew that they might suffer irreparable injury if the Court's order was enforced, and they cannot now avoid ejectment on that basis.

We conclude that after the Andersens failed to appeal the BIA's decision, they were no longer good faith holdover tenants. The district court clearly erred in finding to the contrary. Thus, we find section 12–1257 inapplicable here, and turn, instead, to section 12–1271.

Section 12–1271 permits recovery for "rent, or a fair and reasonable satisfaction for the use and occupation of real property...." The meaning of the word "rent" in this statute is obvious, but the meaning of a "fair and reasonable satisfaction" is less clear.[2] Because the Arizona courts have not defined this term, we turn to common law principles for guidance.

Under the common law doctrine of emblements, if a crop is planted by one rightfully in possession of land, and the person unexpectedly loses possession of the land prior to harvest, he still has ownership rights to the crops he planted. *See Falk v. Amsberry*, 279 Or. 417, 569 P.2d 558, 561 (1977); *Finley v. McClure*, 222 Kan. 637, 567 P.2d 851, 853 (1977); *Richardson v. Scroggham*, 159 Ind.App. 400, 307 N.E.2d 80, 83 (1974); *see generally* 5 R. Powell, *The Law of Real Property* ¶ 663, at 105–06 (1984); 1 *American Law of Property* § 2.16(g), at 142–44 (A. Casner ed. 1952). The doctrine is premised on the policy of avoiding waste of land and the equity that a tenant should be entitled to the crops or their value since it was his labor that produced them. *See* 1 *American Law of Property, supra,* § 2.16(g), at 142. But the law of emblements is limited, and does not apply if, as here, the tenancy is of a fixed rather than indefinite duration, or if the tenancy is terminated due to some act or default of the tenant. *See, e.g., Knighton v. Gary*, 163 Ga.App. 394, 295 S.E.2d 138, 139 (1982) (tenancy of fixed duration); *Hamilton v. Winter*, 281 N.W.2d 54, 59 (N.D.1979) (same); *see Falk v. Amsberry*, 569 P.2d at 560 (tenants breached lease); *see generally* 5 R. Powell, *supra,* ¶ 663, at 105–06; 1 *American Law of Property, supra,* § 2.16(g), at 143.[3]

Closely related to the doctrine of emblements is the rule that one who wrongfully possesses land and sows crops prior to a determination that he is not entitled to possession is still entitled to the crops if he harvested them during the pendency of the controversy relating to the right of possession. *See, e.g., Wright v.*

---

**2.** At a minimum, we think it clear that the "fair and reasonable satisfaction" language encompasses recovery of a rental rate different than that contained in the lease, due to changing market conditions. *See* Restatement (Second) of Property § 14.5 & comment a (1976). But, as we conclude in the text, we think the language also means something more than just this.

**3.** We read section 12–1258, *see supra* note 1, to mean that Arizona recognizes at least a modified version of the doctrine of emblements.

*Vickaryous,* 598 P.2d 490, 499–500 (Alaska 1979); *see generally* 5 R. Powell, *supra,* ¶ 663, at 104. Again, the rationale is that the tenant should not be deprived of the value of his labor. 5 *American Law of Property, supra,* § 19.16, at 67. The landowner's remedy is to recover the reasonable rental value of the property, as it is thought that an owner who receives rent *and* the crops from the land is receiving double recovery. *See Wright v. Vickaryous,* 598 P.2d at 499–500; 5 R. Powell, *supra,* ¶ 663, at 104–05.

■ However, under the doctrine of way-going crops, a tenant who plants a crop knowing the term of his lease will expire before it can be harvested loses all his interest in the crop upon termination of the lease, *see, e.g., Knighton v. Gary,* 295 S.E.2d at 140; *Ahrens v. Dye,* 206 Neb. 423, 293 N.W.2d 388, 390 (1980), *aff'd,* 208 Neb. 129, 302 N.W.2d 682 (1981); *Horne v. Oller,* 5 Kan.App.2d 263, 615 P.2d 791, 792 (1980); *see* Restatement (Second) of Property § 12.3, comment h (1976), absent an agreement or custom to the contrary, *see, e.g., Goings v. Gerken,* 200 Neb. 247, 263 N.W.2d 655, 658 (1978). Thus, if a tenant has been given notice of the termination of his lease, he has no right to crops planted after receiving such notice if the crops cannot be harvested before the termination date. *See, e.g., Fisher v. Stuckey,* 201 Neb 439, 267 N.W.2d 768, 773 (1978).

These common law principles inform the meaning of "fair and reasonable satisfaction" as that term is used in section 12–1271 of the Arizona statutes. *See also* Restatement (Second) of Property §§ 14.5 (allowing recovery against a holdover tenant of "the previous rental rate, or . . . the proven reasonable value independently established if that differs from the previous rental rate"), 14.6 (allowing recovery of special damages against a holdover tenant, defined as those damages which "the tenant could reasonably have foreseen at the time of his holding over would result from his conduct").

■ The Andersens wrongfully possessed the land after February 28, 1978. The BIA notified the Andersens in December 1977 that the lease would terminate February 28, 1978, unless they performed their obligations concerning developments and improvements. The Andersens did not appeal nor did they perform, but instead they planted a new cotton crop. At that point, there was no controversy relating to their right of possession, although the Andersens subsequently have tried to create one. Thus, the rule enunciated in *Wright v. Vickaryous,* 598 P.2d at 499–500, has no application. Rather, the traditional rule of way-going crops applies: the Andersens knew when they planted their crops that the lease had been terminated, and so they are not entitled to the proceeds from the crops. *See Fisher v. Stuckey,* 267 N.W.2d at 773.

It would be neither fair nor reasonable to limit the BIA's and the tribe's recovery to an amount equivalent to the rent due, because the tribe members could have chosen to farm the land themselves, and if they had, the crop proceeds would be theirs. This result does no injustice to the Andersens, because they were aware before they planted any of the three crops that their lease had been terminated. They could have vacated the premises immediately and sought land elsewhere to continue their operations. The Andersens' conduct throughout this litigation evidences intentional dilatoriness. They should be rewarded neither for their conduct, nor for the inevitable delays attendant in litigation.

On the other hand, the Andersens should recover the costs they incurred in producing and harvesting the crops. To the extent that a recovery of costs would not have been allowed under the common law, the "fair and reasonable satisfaction" language in section 12–1271 modifies that rule. The BIA and the tribe would receive a windfall if they were allowed to recover the gross profits from the harvests. *Cf. Ziegler v. Hendrickson,* 528 P.2d 400, 404 (Colo.App.1974) (landlord who wrongfully harvested crop belonging to tenant entitled to recover costs of harvesting and processing; tenant entitled to net profits). Thus, on remand, the district court should determine what portion of the proceeds the An-

dersens should receive for growing, harvesting, and processing, for which they have not been reimbursed.[4]

### III. CONCLUSION

The BIA and the tribe are entitled to recover the profits from the 1978, 1979, and 1980 crops. The Andersens are entitled to recover the costs they expended in raising those crops. The judgment of the district court is reversed and the case remanded for proceedings consistent with this opinion.

REVERSED and REMANDED.

District Judge JAMES M. BURNS, dissents.

---

**4.** This case presents a choice of law issue which we need not decide.

The district court held that the law of Arizona was applicable to this action and alternatively that even if federal law governed, Arizona law should be borrowed as the rule of decision. In the district court, the BIA argued that federal law applied and the Andersens argued that state law applied. On appeal, the BIA has abandoned its earlier position, and now contends solely that the district court's decision is unsupportable under Arizona law.

Were we to decide that federal law governed this action, we would be compelled either to fashion a rule of federal common law, *see, e.g.,* *Bledsoe v. United States,* 349 F.2d 605, 607 (10th Cir.1965), or to borrow state law as the applicable rule of decision, *see, e.g., Wilson v. Omaha Indian Tribe,* 442 U.S. 653, 671–78, 99 S.Ct. 2529, 2539–43, 61 L.Ed.2d 153 (1979). But under either approach, we would reach the same result we reach here. Obviously, borrowing state law would bring us the same result as we reach here, applying that law. If we fashioned a rule of federal common law, we would do so based on the same principles we have held are embodied in the Arizona statutes. Thus, because the choice of law issue has no effect on our decision, we express no opinion concerning it.