The judgment of the Bankruptcy Appellate Panel is AFFIRMED.

**Gerald P. ANDERSEN; Patricia R. Andersen, husband and wife, Plaintiffs-Appellees,**

v.

**Kendall CUMMING, Defendant,**

v.

**BUREAU OF INDIAN AFFAIRS, Defendant-Appellant.**

**No. 86–2447.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 11, 1987.

Decided Sept. 14, 1987.

William P. French, Phoenix, Ariz., for plaintiffs-appellees.

Dirk D. Snel, Washington, D.C., for defendant-appellant.

Before WRIGHT, FARRIS and THOMPSON, Circuit Judges.

FARRIS, Circuit Judge:

The Andersens were tenants on land owned by the Gila River Indian Community. The eight-year lease allowed the Andersens to farm the land in return for rent and specified developments and improvements. The lease was approved and monitored by the Bureau of Indian Affairs. In 1977 the Bureau determined that the Andersens had not fulfilled their obligations and notified them that if they did not perform, the lease would be terminated. In early 1978, the Andersens planted a crop of cotton on the land. The Bureau informed them shortly afterward that they had still not complied with the lease terms, and that the lease was terminated. The Andersens did not appeal the determination or vacate the land. After the Bureau filed suit, the parties agreed that the Andersens would harvest the cotton crop, but that the proceeds from sale would be paid into the court registry until an equitable distribution could be made. The same arrangement was made in 1979 and 1980.

In 1980 the district court granted a motion for ejectment which we affirmed. *Andersen v. Cummings*, 659 F.2d 1087 (unpublished memorandum, 9th Cir.1981). Both parties then moved to collect the $812,226.81 in proceeds from the three cotton crops, along with the interest accrued. The district court ruled that the tribe was entitled to collect rent for all of the years that the Andersens remained in possession of the leased land.

In *Andersen v. Bureau of Indian Affairs*, 764 F.2d 1344, 1347 (9th Cir.1985), we found that Arizona law allowed the tribe to collect either rent or a "fair and reasonable satisfaction for the use and occupation" of the land. 764 F.2d at 1347. We concluded that the tribe was entitled to any profits from sale of the crops as a "fair and reasonable satisfaction," and that the Andersens were entitled to recover the costs of

"growing, harvesting, and processing" the cotton. *Id.* at 1348–49.

The district court found that the Andersens realized a profit in 1979 of $41,601.16, and awarded that amount to the tribe. It found that the Andersens suffered losses in 1978 and 1980, and concluded that the tribe was entitled to no payment for those years. The court awarded the rest of the fund, a total of $770,625.65, to the Andersens as reimbursement for the cost of producing the cotton.

The primary question on appeal is whether the costs of making the land suitable for farming as required by the lease—called "subjugation costs" in the lease—should have been allowed as part of the cost of producing the cotton. The total "subjugation costs" allowed were $310,815.94. Questions of law are reviewed *de novo*. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The Bureau contends that the subjugation payments the Andersens were required to make under the lease were in effect rent payments. It argues that if those payments are included in the costs of producing the crops, and returned to the Andersens from the gross proceeds, the Andersens will be receiving a refund of rent. They would not have received such a refund if the lease had continued in effect, the Bureau asserts, so they are getting a windfall as a result of their bad-faith holding over on the land. We disagree. If the lease had not been terminated, the Andersens would have recouped the subjugation expenses out of the gross proceeds from the sale of crops, just as they have under the district court's distribution.

The lease agreement contemplated that the leased land would be made suitable for farming—"subjugated"—and eventually returned to the tribe in that condition. The Andersens' subjugation costs cannot be viewed simply as rent. Under the lease arrangement, the subjugation costs expended by the Andersens would benefit both parties: the land would be improved

so that the Andersens could grow crops for a profit, but it would later revert to the tribe in its improved state. Under the terms of the lease the tribe was entitled only to rental payments and a return of the land with improvements. If the tribe were to receive the money that the Andersens paid in subjugating the land in addition to the subjugated land, the tribe would have a great windfall.

The Bureau argues that other minor costs should not have been included in the cost accounting. We review such questions of fact for clear error. *La Duke v. Nelson*, 762 F.2d 1318, 1321 (9th Cir.1985).

The Bureau claims that an outside company made disbursements to the Andersens for various costs that would be incurred in the raising of cotton, and that the Andersens' accountant included all of those disbursements in his cost computation, even though some of the money covered the Andersens' two other cotton-farming operations. It contends that "nothing in the record assures that Andersens' expenditures from his own checking account were not applied to [other farming] operations." It argues also that the district court improperly allowed the Andersens to include certain overhead costs in its accounting. Some of these costs, the Bureau contends, were not actually paid by the Andersens, and others were not related to the raising of crops. Specifically, the Bureau argues that charges for water assessments and taxes were included, even though the Andersens' water supply to the leased land was free, and Indian land is not taxed. It argues also that costs of litigation having no relation to the growing of cotton were included. The Bureau failed to challenge specific conclusions of the Andersens' witness with contradictory evidence of its own. It now seeks remand so that it can compel the Andersens to submit more supporting evidence.

Ordinarily we will not decide an issue that was not addressed by the district court. *Greater Los Angeles Council on Deafness v. Zolin*, 812 F.2d 1103, 1107 (9th Cir.1987). However, we have discretion to review issues raised for the first time on appeal if to do so would not require the development of new facts. *People of the Village of Gambell v. Hodel*, 774 F.2d 1414, 1426 (9th Cir.1985). We find that the facts are not sufficiently developed for us to rule on the issues raised. At trial the Bureau raised questions of law—arguing that certain types of costs should not be allowed—but it never raised the issues of fact it attempts to raise here. It never asked the district court to disallow precise amounts or even established that the costs it objected to were in fact included. Instead the Bureau elected to pursue its own theory that costs should be calculated by an entirely different method. Under these circumstances we cannot find that the figures given by the district court are clearly erroneous.

The appealing litigant must ensure that sufficient facts are developed at trial to support a challenge on appeal. *See Deakle v. John E. Graham & Sons*, 756 F.2d 821, 830–31 (11th Cir.1985) ("Having failed to perfect the record at trial, Graham cannot complain on appeal that an error has been made."), which we followed in *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1351 (9th Cir.1987) (holding that court could not consider whether taxes should be subtracted from award of future income on appeal where appellant had not introduced evidence about effects of taxation at trial). The Bureau must bear the burden of a factual record that is incomplete on the issues it raises.

AFFIRMED.