Natalie **HOWARD** and **Custom Home Plans, Inc.**

v.

John **STERCHI**, **Stonemill Log Homes, Inc.**, and **Mattox Development Co., Inc.**

No. 2:87–cv–108–WCO.

United States District Court, N.D. Georgia, Gainesville Division.

March 30, 1989.

Frederick E. Link, Gainesville, Ga., for plaintiff.

T. Tucker Hobgood, D. Glenn Brock, Marietta, Ga., for defendants.

## ORDER

O'KELLEY, Chief Judge.

This case is presently before the court for consideration of the defendants' motions to dismiss and for summary judgment, and the plaintiffs' motions to withdraw admissions and for leave to file a supplemental brief. On January 26, 1989, the court heard oral argument on all motions save the motion to file a supplemental brief, after which it took the matters under advisement. After careful consideration, the court denies the defendants' motion to dismiss, grants in part and denies in part their motion for summary judgment, and grants the plaintiffs' motions to withdraw admissions and to file a supplemental brief.

### Introduction

Natalie Howard ("Howard") and Custom Home Plans, Inc. ("Custom") brought this action alleging copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* ("the Act"), and other state law pendent claims. Jurisdiction is based upon a federal question. 28 U.S.C. § 1338(b). The defendants are John Sterchi ("Sterchi"), Stonemill Log Homes, Inc. ("Stonemill"), and Mattox Development Co., Inc. ("Mattox").

Howard is a designer of country-style and log homes. She and her husband established Custom to market and promote Howard's designs. Stonemill and Mattox are allegedly joint venturers in the manufacture and supply of materials, compo-

nents and supplies for log homes, Stonemill being the principal of that joint venture. Sterchi, who is associated with Stonemill, became interested in using Howard's designs, and discussed that prospect with her sometime prior to the fall of 1978. After some discussion over a period of time, Sterchi, as agent for Stonemill, contracted with Howard for the use of various of Howard's designs. Their agreement was memorialized in a writing executed on October 5, 1978. The plaintiffs maintain, however, that this writing did not mention the provisions of an earlier oral contract between the parties, which they allege was fully executed prior to the written agreement. The plaintiffs assert that the written agreement was intended to complement and not supersede the earlier oral contract.

The oral and written agreements permitted Stonemill to use several of Howard's log cabin designs in its promotion efforts. The plaintiffs submit that the parties intended to create a joint marketing effort in which Stonemill would advertise and otherwise promote the use of Howard's log designs for the benefit of both parties.

Howard developed a log home plan book for Stonemill, using particular designs from Howard's preexisting country home plan books. The plaintiffs further maintain that Stonemill, through Sterchi, its agent, agreed to have the log renderings for the new log plan book redrawn from preexisting designs, and to provide attribution and credit to Howard for any of her log designs or renderings [1] from the log plan book displayed by Stonemill in advertisements or promotional materials. As re-

turn consideration, Howard agreed to list Stonemill as the exclusive log manufacturer and supplier in the log plan book. The plaintiffs assert that Stonemill breached the oral contract by using the log renderings and designs without attributing authorship of the works to her.

Howard terminated the contracts by written notice on November 22, 1983. However, the plaintiffs contend that the defendants have continued to use certain of Howard's plans in violation of her copyrights. The defendants have counterclaimed for invalidity of those and other purported copyrights on Howard's designs, and have also asserted various pendent state law counterclaims.

### Motion to Dismiss

The defendants have moved to dismiss the plaintiffs' copyright claims pursuant to Fed.R.Civ.P. 12(b)(1). Specifically, the defendants seek dismissal of the plaintiffs' copyright claims regarding floor plan F–1080, and log renderings for floor plans L–10, L–1390, F–780/L–780, maintaining that the complaint as to these designs is jurisdictionally deficient for failure to allege registration of independent copyrights. 17 U.S.C. § 411(a).[2]

The plaintiffs allege that Howard secured copyright registration certificates for certain "books" as "compilations" under the Act.[3] 17 U.S.C. § 103(b).[4] They further maintain that the floor plans and rendering at issue are contained in the books and, as such, were properly registered through registration of the compilations. The defendants, however, submit that these designs were separate and preexist-

---

**1.** A rendering is a "finished perspective drawing of a proposed building or product." Webster's Third New International Dictionary 1922 (1981).

**2.** The defendants also argue that the amended complaint contains new counts and parties not envisioned by the court's order of June 7, 1988. The court is of the opinion that the order envisioned any amendments that the plaintiffs' new counsel believed were necessary, inasmuch as he advised the defendants' counsel of his intent to "clean up the pleadings" during the January 20, 1988 hearing on the motion to amend.

**3.** These compilations include: (1) 1979 "COUNTRY PLANS by Natalie," denoted as TX 307–684; (2) 1980 "COUNTRY PLANS by Natalie,"

denoted as TX 558–594; and (3) 1980 "LOG HOMES by Natalie," denoted as TX 558–595.

**4.** Section 103(b) provides as follows:

The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.

ing works at the time the books were registered as compilations under § 103(b). Noting that § 103(b) affords no additional protection for preexisting works contained in a compilation, the defendants argue that the plaintiffs have failed to allege certification of the floor plan and renderings, and that the copyright claims should therefore be dismissed on jurisdictional grounds. 17 U.S.C. § 411(a).

■ Section 103(b) indeed provides no additional copyright protection for preexisting material contained in a compilation or derivative work. The copyright interest protected by registration of a compilation typically relates solely to author's " 'selection, organization and arrangement of the preexisting materials.' " *Southern Bell Tel. & Tel. Co. v. Associated Telephone Directory Publishers*, 756 F.2d 801, 809 (11th Cir.1985) (quoting Boorstyn, *Copyright Law*, § 2:19 at 59 (1981)). Likewise, the protection afforded registration of a derivative work embraces the "non-trivial, original features, if any, contributed by [its] author or creator." *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 909 (2d Cir.1980). The registration of a "collective work," a specie of compilation, typically protects the arrangement of separate and independently copyrightable works.[5] 17 U.S.C. § 101.

■ The essence of the plaintiffs' defense to the motion is not that the defendants have infringed the selection, organization and arrangement of the plans in the book, but rather that the defendants have infringed copyrights to the modifications made to the preexisting plans. The chief issue, therefore, is whether Howard properly registered her purported copyrights in independent derivative works by registering the plan books in which they were published.

This is a question of first impression, and one not specifically addressed in the Act. Although registration of a collective work compilation is typically associated with protection of the manner of assemblage of materials, the court fathoms no reason why the "new material contributed by the author" protected under § 103(b) should be limited to organizational contributions.[6] This is particularly true where the copyright holder of the collective work is alleged, like the plaintiffs, to be the copyright owner of the derivative components contained in the collective work. *Accord* 2 *Nimmer on Copyright* § 7.16[B][2].[7] Per-

---

**5.** The compilations at issue may be best characterized as collective works. This is because the copyrighted books allegedly contain both original and non-original materials; the plaintiffs submit that the renderings and floor plan at issue, although based upon preexisting plans, were nevertheless substantially altered before being included in the books. Each plan and rendering, therefore, is an independent and separate derivative work, which was then assembled with other such works in a compilation. Of course, the attachment of the label "collective work" is not alone dispositive of the issue of whether a copyright was created. *Southern Bell*, 756 F.2d at 810.

**6.** The court further notes that a typical compilation can contain organizational components which may be theoretically capable of independent copyright protection, yet are nevertheless protected by registration of the compilation. Hence, the mere fact that components in a collective work are more easily severed does not compel the conclusion that they *must* be severed and separately registered.

**7.** Regarding infringement of component works in a collective work, Professor Nimmer states that:

[o]n principle a separate registration relating to the pre-existing work would appear to be necessary, since it is that copyright which has been infringed even though the defendant copied directly from the derivative or collective work. The copyright owner of a derivative or collective work does not *in such capacity* obtain copyright in any pre-existing work even though he may belicensed [sic] to incorporate such material in the derivative or collective work. The fact that the copyright owner of the derivative or collective work is not merely a licensee of the pre-existing work but is himself also the copyright owner therefore may alter this conclusion, and permit the registration only of the derivative or collective work in an infringement action of the type described above.

2 *Nimmer on Copyright* § 7.16[B][2] (emphasis in original) (footnote omitted). *See also Rexnord, Inc. v. Modern Handling Systems, Inc.*, 379 F.Supp. 1190, 1198–99 (D.Del.1974) (same result under 1909 Act).

The defendants have argued in their motion for summary judgment that Howard is not the owner of two of the log renderings at issue. Of course, a different result might obtain as to those renderings if the defendants prove that Howard is not the owner.

haps a prudent author might obtain independent registrations for her derivative works in addition to a registration for the compilation containing them, but such a requirement is not mandated by the Act.

This conclusion is bolstered by analogy to the notice of copyright provision under the Act. 17 U.S.C. § 404(a). Section 404(a) provides that a single copyright notice on a collective work satisfies the notice requirements with respect to each component of the collective work, regardless of the ownership of the copyrights for the independent components. 17 U.S.C. § 404(a). Section 404(a) further envisions that an author compiling her own separate works in a book need only notice the copyright as to the compilation, and need not place a notice of copyright as to each of the components. *See, e.g., Donald Frederick Evans & Assoc., Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 906–07 (11th Cir.1986) (discussing § 404(a) and the advertising exception thereto). Similarly, the copyright registration for a compilation should arguably serve as registration for its components. Accordingly, the court denies the motion to dismiss.

### Motion to Withdraw And/Or Amend Admissions

The plaintiffs have moved to withdraw several admissions of fact made on October 29, 1987. Fed.R.Civ.P. 36(b). These admissions were drafted by the plaintiffs' former counsel, Richard Tunkle, and primarily relate Howard's and Attorney Tunkle's belief that certain floor and log home plans were substantially similar to other plans in the public domain. The motion to withdraw or amend was filed 14 months after the admissions were made and 1 month after the defendants filed their motion for summary judgment. The plaintiffs contend that Attorney Tunkle drafted the admissions at a time when he was upset over a pending motion for rule 11 sanctions for filing meritless infringement claims in this case. The plaintiffs further argue that they acted too hastily in assuming and admitting the similarity of the plans during this pensive time, and claim that subsequent reflection revealed to them that the admissions were incorrect.

The plaintiffs now wish to withdraw the admissions to correct their error.

Rule 36(b) in relevant part provides that the court may permit withdrawal or amendment [of admissions] when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.

*See also Smith v. First Nat'l Bank of Atlanta*, 837 F.2d 1575, 1577 (11th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 64, 102 L.Ed.2d 41 (1988). Rule 36(b) strikes a balance between the competing interests of having a case resolved on the merits and avoiding prejudice to a party who justifiably relies on an admission. *Id.* at 1577–78 (citing the advisory committee's note to rule 36(b)). Prejudice under the rule " 'relates to the difficulty a party may face in proving its case, *e.g.*, caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions.' " *Id.* at 1578 (quoting *Brook Village North Assoc. v. General Elec. Co.*, 686 F.2d 66, 70 (1st Cir.1982)).

At the hearing on January 26, 1989, the court intimated that it would grant the motion to the extent the amendments were consistent with Howard's deposition testimony. At that time the court assumed that her deposition was recorded much later than the admissions. In fact, the defendants deposed her 9 days *prior* to the date of the admissions. Hence, Howard labored under the same pressures during the deposition as she did when conferring with Attorney Tunkle prior to the drafting of the admissions. Hence, she did not enjoy the benefit of detached reflection prior to the deposition. As such, the deposition testimony regarding the subject matter of the admissions provides little assistance to the court in determining whether the amendments are fabrications, or whether the plaintiffs' original admissions were simply based upon a faulty assumption. *See Reyes v. Vantage S.S. Co., Inc.*, 672 F.2d 556, 557 (5th Cir.1982).

Having carefully considered the matter, the court concludes that there is sufficient evidence to show that the plaintiffs made the initial admissions in haste and under the faulty assumption that the plans were similar to those in the public domain. Hence, permitting the withdrawal and amendment of the admissions will subserve the presentation of the merits of this action, notwithstanding the fact that the plaintiffs indeed were dilatory in failing to move for withdrawal at an earlier time. Furthermore, the defendants have not shown that the withdrawal and attendant delay will prejudice their ability to discover evidence or present their case on the merits. Accordingly, the court grants the plaintiffs' motion.

The court, however, is aware that the defendants detrimentally relied upon the earlier admissions in preparing their motion for summary judgment on their counterclaims. Accordingly, the court permits them 10 days in which to move for expenses and fees occasioned by their reliance on the original admissions.

Motion for Summary Judgment

The defendants have moved for summary judgment as to various claims and counterclaims in this case. At the outset, the court notes that summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). Because the procedure deprives parties of a trial on the issues, the court must be careful to ensure that only those claims for which there is no need for a factual determination as to any material fact are disposed of by summary judgment. *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The summary judg-

ment procedure, however, is not regarded as a "disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.Rule Civ.Proc. 1." *Id.*

Summary judgment will not lie when sufficient evidence exists to cause a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The standard for evaluating summary judgment motions mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). *Id.* 106 S.Ct. at 2511. Hence, the trial court may grant summary judgment only when there can be but one reasonable conclusion as to judgment under the applicable law. *Id.* With these fundamental notions in mind, the court turns its attention to the instant case.

The defendants' motion embraces the following categories of claims: (1) the plaintiffs' copyright infringement claims for log renderings L–10, L–1390, and F–780/L–780, and for floor plan F–1080/L–1080; (2) the plaintiffs' pendent state law claims for breach of contract, breach of implied duty of good faith and fair dealing, and unjust enrichment;[8] (3) the defendants' counterclaims regarding construction plans L–13, L–1252, L–130 and L–1390; and (4) the defendants' counterclaims regarding floor plans L–13, L–1252, L–130 and L–1390.[9] The court will address these groups of claims seriatim.

*Plaintiffs' Copyright Infringement Claims for Log Renderings L–10, L–1390, and F–780/L–780, and for Floor Plan F–1080/L–1080*

The plaintiffs claim that the defendants infringed Howard's copyrights in log renderings L–10, L–1390 and F–780/L–780.

---

**8.** The court notes that the defendants' motion does not specifically mention the plaintiffs' pendent state claims. However, the motion requests summary judgment as to all of the plaintiffs' claims, and their brief specifically argues for summary judgment as to these three pendent claims.

**9.** Although the defendants have moved for summary judgment on their pendent state law counterclaims, their brief is silent on those claims, and the court therefore declines to grant summary judgment on those matters. The defendants also suggest that the court invalidate certain copyright registrations which are not at issue in this case. The court declines this invitation as well.

Log renderings L–10, L–1390 and L–780 were not drafted by Howard. Rather, she admits that these were redrawn from preexisting renderings by an individual named Bruce Matthews. Sterchi allegedly retained Matthews for the benefit of Howard and in his capacity as Howard's agent. Hence, these three infringement claims relate to renderings which Howard did not personally create and, therefore, necessarily implicate the "work made for hire" doctrine under the Act. 17 U.S.C. §§ 101, 201.

The plaintiffs allege a direct ownership interest in the renderings under the "work made for hire" doctrine. However, their arguments in this regard are cryptic at best, and entirely absent from their briefs in opposition to summary judgment. However, the court determines by implication that the there is a genuine question of material fact regarding whether Matthews was an employee of Sterchi under § 101(1). Neither party has argued this specific issue, although its resolution is critical to the proper application of the "work made for hire" doctrine. If the plaintiffs prove that Matthews was an employee, the renderings might have become "work made for hire," and the property of the plaintiffs through Sterchi's alleged agency relationship with Howard.[10]

Furthermore, the court concludes that additional genuine issues of material fact remain regarding the validity of the plaintiffs' copyrights on these three log renderings, as well as log rendering F–780, and floor plan F–1080/L–1080. The chief question of material fact is whether the renderings and floor plan were sufficiently original to be copyrightable. *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 908–11 (2d Cir.1980). Furthermore, regard-

ing floor plan F–1080/L–1080, a genuine issue of material fact exists as to whether the plaintiffs knowingly failed to supply information to the copyright office by omitting certain information from item six on the relevant copyright application. *Original Appalachian Artworks, Inc. v. Toy Loft*, 684 F.2d 821, 827–28 (11th Cir.1982). *Plaintiffs' Pendent Claims for Breach of Contract, Breach of Implied Duty of Good Faith and Fair Dealing, and Unjust Enrichment*

■ The defendants have moved for summary judgment on the plaintiffs' pendent state law claims for breach of contract (Counts Five and Six), breach of implied duty of good faith and fair dealing (Count Eight), and unjust enrichment (Count Seven). All of these claims relate to the alleged oral contract between Howard and Stonemill. The defendants maintain that these claims are preempted by the Act. 17 U.S.C. § 301.[11]

This circuit has held that § 301 establishes a two-prong test for determination of preemption. *See Crow v. Wainright*, 720 F.2d 1224, 1225–26 (11th Cir.1983), *cert. denied*, 469 U.S. 819, 105 S.Ct. 89, 83 L.Ed.2d 35 (1984). That test requires the court to "determine whether the rights at issue fall within the 'subject matter of copyright' set forth in sections 102 and 103 and whether the rights at issue are 'equivalent to' the exclusive rights of section 106." *Id.* *See also Donald Frederick Evans & Assoc., Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 914 (11th Cir.1986). Assuming the rights implicated by a state law claim fall within the subject matter of § 102 and § 103, the claim is nevertheless deemed not equivalent to rights under the Act if additional elements must be proven.

---

**10.** While not ruling on the issue at this time, the court notes that a finding that Matthews was an independent contractor might preclude the plaintiffs' claims regarding the renderings prepared by him. *See Community for Creative Non–Violence v. Reid*, 846 F.2d 1485, 1494 (D.C. Cir.1988) (work made for hire will not lie for works of independent contractor in the absence of a written agreement).

**11.** Section 301(a) of the Act instructs:
On and after January 1, 1978, all legal or equitable rights that are equivalent to any of

the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

*Id.* (citing 1 *Nimmer on Copyright* § 1.01[B] at 1–11—1–12).

The log floor plans and renderings at issue under the oral contract are clearly within the subject matter of the Act inasmuch as they are "pictorial" and "graphic" works under § 102(a)(5). Therefore, the sole issue for determining preemption is whether the rights alleged are equivalent to the exclusive rights under § 106. Section 106 states, in relevant part that

> the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
> (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; and (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly.

The pendent state claims for breach of contract and breach of implied duty of good faith and fair dealing are not equivalent to any of the exclusive rights listed in § 106. These claims are not based solely upon Stonemill's use of the plans and renderings. Rather, the plaintiffs seek recovery for Stonemill's failure to attribute the designs to Howard. The plaintiffs properly analogize this to a breach of an agreement to pay royalties.[12] Such claims for breach of a royalty agreement require additional elements be proven, and thus are not preempted under the Act. *Brignoli v. Balch, Hardy and Scheinman, Inc.*, 645 F.Supp. 1201, 1205 (S.D.N.Y.1986). This same conduct

by Stonemill would also constitute breach of the contract's implied covenant of good faith and fair dealing. Hence, both of the contract-based claims allege more than unauthorized use, require proof of additional elements, and are therefore not "equivalent to" exclusive rights under § 106. *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923 (4th Cir.1988).[13]

Similarly, the claim for unjust enrichment, Count Seven, requires proof of an additional element beyond unauthorized use. Howard endorsed Stonemill by listing it as exclusive dealer in the log home plan book. Stonemill allegedly failed to attribute authorship of the plans to Howard in return for this benefit, and therefore may have been unjustly enriched. Accordingly, the court concludes that the claim for unjust enrichment is not preempted under the Act.

*Defendants' Counterclaims Regarding Construction Plans L–13, L–1252, L–130 and L–1390*

■ The defendants seek summary judgment on their claims for declaratory relief regarding the invalidity of copyrights for construction plans L–13, L–1252, L–130 and L–1390. The plaintiffs have admitted that these plans were published without notice of copyright as required by § 401 of the Act. Specifically, Howard has admitted the following facts regarding publication of the designs for the time period ending on December 31, 1988:

> (1) Construction plan L–1390: 150 sets were sold, 86 with notice, 64 without notice. Stonemill sold 25 of those distributed without notice, and 27 of those distributed with notice.
> (2) Construction plan L–130: 393 sets were sold, 224 with notice, 169 without notice.
> Stonemill sold 71 of those distributed without notice, and 81 of those distributed with notice.
> (3) Construction plan L–1252: 155 sets were sold, 74 with notice, 81 without

---

12. The royalties would be paid in the form of advertising that Plaintiff Howard would receive by virtue of attribution on the various promotional materials disseminated by Stonemill.

13. The court is aware that Counts Six and Eight also seek to enjoin the use of the plans. This remedy appears to implicate an exclusive right under § 106. An injunction, therefore, may be preempted. The court will address this remedy issue at the pretrial conference.

notice. Stonemill sold 26 of those distributed without notice, and 29 of those distributed with notice.

(4) Construction plan L–13: 193 sets were sold, 86 with notice, 107 without notice. Stonemill sold 36 of those distributed without notice, and 35 of those distributed with notice.

Section 405 of the Act provides that a copyright owner's distribution of a work without notice invalidates the copyright. That section provides exceptions to this general rule, only one of which, embraced in § 405(a)(1), is factually applicable to the instant case.[14] Section 405(a)(1) provides that the copyright is not invalidated if "the notice has been omitted from no more than a relatively small number of copies or phonorecords distributed to the public."

In an early application of § 405(a)(1), this circuit concluded that 400 of 40,000 items (or 1%) distributed without notice of copyright constituted a relatively small number. *Original Appalachian Artworks, Inc. v. Toy Loft*, 684 F.2d 821, 827 (11th Cir.1982). The court in that case emphasized the small percentage of works published without notice as important in resolving the issue. *Id.* In *Donald Frederick Evans & Assoc., Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 910 (11th Cir.1986), the panel held that a court applying § 405(a)(1) must look to both the absolute and relative numbers published, and further instructed that

the court must analyze the issue "on a case-by-case basis in light of the totality of the circumstances." *Evans*, 785 F.2d at 910.[15] The court in that case determined that distribution of 2,500 copies of a design without notice of copyright, constituting 2.4 percent of the total number of copies, was more than a relatively small number. *Id.*

In this case it is clear that significant numbers of each of the plans at issue were distributed without notice of copyright.[16] Under the case-by-case approach espoused in *Evans*, the plaintiffs suggest that they should not be penalized for the distributions made without notice by Stonemill. This argument has merit only to the extent Stonemill was not authorized by Howard to distribute sets of the plans. However, even deleting Stonemill's participation from the analysis, the court concludes that more than a relatively small number of each of the designs were distributed without notice of copyright.[17] Accordingly, the court grants summary judgment in favor of the defendants as to their counterclaims for declaration of invalidity as to copyrights for construction plans L–13, L–1252, L–130 and L–1390.

*Defendants' Counterclaims Regarding Floor Plans L–13, L–1252, L–130 and L–1390*

The plaintiffs have conceded the invalidity of the copyrights regarding floor plans

14. The plaintiffs have proffered no evidence of remedial effort as required under § 405(a)(2), or of a breach of an agreement requiring another to place the notice on the work as required under § 405(a)(3).

15. The *Evans* court mentioned that the notices on the works in *Toy Loft* were inadequate because they were defective, thereby implying that this was a factor which the *Toy Loft* court might have taken into consideration in determining that insufficient items were distributed without notice of copyright. *Evans*, 785 F.2d at 910. Hence, the *Evans* court suggested that application of the case-by-case analysis would not have altered the decision in *Toy Loft*.

16. The numbers and percentages distributed without notice are set forth below:
   L–1390: 64 of 150 sets sold without notice, or 43%
   L–130: 169 of 393 sets sold without notice, or 43%

L–1252: 81 of 155 sets sold without notice, or 52%
L–13: 107 of 193 sets sold without notice, or 55%

17. The court concludes that the proper adjustment, if any is appropriate, should reflect the total sales by Stonemill, not just the quantity distributed without notice by Stonemill. This will ensure that the plaintiffs are neither penalized nor benefitted by Stonemill's participation. Adjusting the percentages and quantities to eliminate Stonemill's participation yields the following:
   L–1390: 39 of 98 sets sold without notice by Plaintiff Howard, or 40%
   L–130: 98 of 241 sets sold without notice by Plaintiff Howard, or 41%
   L–1252: 55 of 100 sets sold without notice by Plaintiff Howard, or 55%
   L–13: 71 of 122 sets sold without notice by Plaintiff Howard, or 58%

L–1252, L–130 and L–1390. Accordingly, the court grants summary judgment in favor of the defendants as to their counterclaims for declaration of invalidity as to copyrights for floor plans L–1252, L–130 and L–1390. However, the court concludes that genuine issues of material fact remain regarding the validity of floor plan L–13, and therefore declines to grant summary judgment as to that floor plan.[18]

### Conclusion

Accordingly, the court denies the defendants' motion to dismiss, and grants in part and denies in part their motion for summary judgment. Specifically, the court grants summary judgment in favor of the defendants as to their counterclaims for declaration of invalidity of copyrights for construction plans L–13, L–1252, L–130 and L–1390, and floor plans L–1252, L–130 and L–1390. Further, the court grants the plaintiffs' motions to withdraw admissions and to file a supplemental brief. The defendants are allowed 10 days to file a motion for fees and expenses for work occasioned by their reliance on the withdrawn admissions. Finally, the clerk is directed to set this case for a pretrial conference on the next available pretrial calendar after the close of discovery.

IT IS SO ORDERED.

---

**18.** Furthermore, the court declines the invitation to invalidate Certificate of Registration TX–558–595 for the compilation "LOG HOMES by Natalie" 1978, inasmuch as the compilation might contain protected material even in the absence of a valid copyright on floor plan L–13.