964 F.Supp. 1469 (1997)
In re INDEPENDENT SERVICE ORGANIZATIONS ANTITRUST LITIGATION.
This Document Applies To:
CSU Holdings, Inc., et al.
v.
Xerox Corp. (D.Kan. No. 94-2102-EEO)
Civil Action No. MDL-1021.
United States District Court, D. Kansas.
March 21, 1997.
*1470 Eric D. Braverman, Employers Reinsurance Corp., Overland Park, KS, P. John Owen, Lori R. Schultz, Morrison & Hecker, Kansas City, MO, Michael C. Manning, Morrison & Hecker, Phoenix, AZ, for CSU Holdings *1471 Inc., Copier Services Unlimited Inc., Copier Service Unlimited of St. Louis, Inc.
James A. Hennefer, San Francisco, CA, Maxwell M. Blecher, Los Angeles, CA, for Acquisition Specialists, Inc., Tecspec, Inc., Consolidated Photo Copy, Inc., Copier Rebuild Center, Inc., CPO Ltd., Creative Copier Services, Inc., Gradwell Co., Inc., Graphic Corp. of Alabama, Northern District of Cal., Intern. Bus. Equip., Inc., Laser Resources Inc., Laser Resources of Minn., Laser Solutions, Inc., Laser Support and Engineering, Inc., Marathon Copier Service, Inc., Nationwide Technologies, Inc., Reprographics Resources Systems, Inc., Resources Systems, Inc., Suntone Indus., Inc., Technical Duplication Services, Inc., X-Tech Systems Inc., Xer-Dox Inc., Xerographic Copies Services, Inc.
Peter K. Bleakley, Arnold & Porter, Washington, DC, Peter W. Marshall, Xerox Corp., Stamford, CT, Michael G. Norris, Norris, Keplinger & Logan, L.L.C., Overland Park, KS, C. Larry O'Rourke, E. Robert Yoches, Vincent P. Kovalick, Leslie I. Bookoff, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, for Xerox Corp.

MEMORANDUM AND ORDER
Earl E. O'CONNOR, Senior District Judge.
This matter is before the court on defendant's motion for summary judgment on its copyright infringement and conversion counterclaims (Doc. 1374) and plaintiff's cross-motion for summary judgment on Xerox's copyright infringement and conversion counterclaims (Doc. 1441). After careful consideration of the parties' briefs and evidentiary material, the court is prepared to rule. For the reasons set forth below, both motions are denied.
Xerox moves for summary judgment on its copyright infringement counterclaims arguing that (1) CSU has infringed on Xerox's copyrights for diagnostic software and service manuals, and (2) CSU's defenses are insufficient as a matter of law. CSU has filed a cross-motion for summary judgment on Xerox's copyright infringement counterclaims, arguing that (1) Xerox has not established that its diagnostic software and service manuals are protected material under the copyright laws, and (2) Xerox's copyright infringement claims are barred by its misuse, statute of limitations, and laches defenses.

Factual Background
Xerox publishes operator and service manuals for use by those who service its copiers and printers. Xerox is the owner of the copyrights for these manuals and has registered a large number of these copyrights pursuant to the Copyright Act. Xerox also has developed diagnostic software to detect and repair machine failures on the Xerox model 5090 copier. The Xerox 5390 copier is an upgraded version of the 5090 copier and can use the same software as the 5090. The 5090 diagnostic software is published by Xerox on a set of floppy disks called "software upgrade disks." At the time a new 5090 copier is installed at a customer's site, the software upgrade disks are used to install the diagnostic software on a hard disk located inside the 5090 copier. Software upgrade disks are also used to install improved versions of Xerox diagnostic software.
Xerox laser printers, including the models 4050, 4090, and 4650, also utilize diagnostic software. This software is distributed by Xerox on floppy disks or on magnetic tapes. At the time the laser printer is installed, these disks or tapes are used to load the diagnostic software onto the printer's hard disk. Xerox is the owner of the copyrights in all versions of the software for the Xerox 5090 copier. The copyrights for upgrade levels K, L, and M of the 5090 software have been registered pursuant to the Copyright Act. Xerox also is the owner of the copyrights for all versions of the diagnostic software for the 4050, 4090, and 4650 printers. The copyright for version 3.5 of the software has been registered pursuant to the Copyright Act.
CSU has produced evidence of Xerox's parts policy and Xerox's alleged efforts to restrict ISO access to Xerox patented and copyrighted products in an effort to drive ISOs out of the copier and printer service markets. This evidence is nearly identical to the evidence CSU presented regarding Xerox's motion for summary judgment on patent *1472 infringement, described in this court's March 19, 1997, Memorandum and Order. With respect to copyrighted software specifically, CSU has presented evidence that prior to 1991 Xerox sold its equipment with diagnostic and operating software already installed. Later, Xerox attempted to unbundle its diagnostic and operating software and enforce its separate intellectual property rights in diagnostic software in what CSU characterizes as a tool to defeat ISO competition.

Summary Judgment Standards
Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); accord Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S.Ct. at 2510.
The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir.1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52, 106 S.Ct. at 2512. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Id. at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. Id. at 252, 106 S.Ct. at 2512.
Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.
"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 793 (10th Cir. 1988). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Anderson, 477 U.S. at 256, 106 S.Ct. at 2514. Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D. Kan. Rule 56.1.

Analysis

I. Xerox's Affirmative Case Of Copyright Infringement.
Xerox asserts in its counterclaims that CSU has infringed on its copyrights for diagnostic software (count II) and manuals (count V). Both CSU and Xerox have filed motions for summary judgment on Xerox's copyright infringement counterclaims. To prevail on its claim of copyright infringement, Xerox must establish (1) ownership of a valid copyright and (2) copying by CSU of protected components of the copyrighted material. Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823, 831 (10th Cir.1993) (citing Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361, 111 S.Ct. 1282, 1295-96, 113 L.Ed.2d 358 (1991), and Autoskill, Inc. v. National Educ. Support *1473 Sys., Inc., 994 F.2d 1476, 1487 (10th Cir.), cert. denied, 510 U.S. 916, 114 S.Ct. 307, 126 L.Ed.2d 254 (1993)).

A. Xerox's Registration Of Its Copyrights.

Registration of a copyright is a prerequisite to the filing of an infringement action. See 17 U.S.C. § 411(a) ("no action for infringement of the copyright of any work shall be instituted until registration of the copyright claim has been made"); see also M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1488 (11th Cir.1990) (registration is a jurisdictional prerequisite). The copyright registrations at issue pertain to "derivative works." A "derivative work" is defined as "a work based upon one or more preexisting works" to which original materials are newly added. 17 U.S.C. § 101. The copyright statute provides that
[t]he copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.
17 U.S.C. § 103(b). The copyright statute does not address directly the distinction between preexisting material from other authors and preexisting material from the author of the derivative work. The leading commentator on copyright law and courts which have addressed this issue have stated that an owner of a registered copyright in a derivative work does not have to register separately the preexisting work before bringing an infringement action based on the derivative work. See Computer Assocs. Int'l, Inc. v. Altai, Inc., 775 F.Supp. 544, 555-57 (E.D.N.Y.1991), aff'd in part and vacated in part on other grounds, 982 F.2d 693 (2d Cir.1992); 2 Melville B. Nimmer & David Nimmer, Nimmer On Copyright, § 7.16[b][2] at 7-169, 7-170 (1996) (hereinafter "Nimmer on Copyright"). The court finds that this result is consistent with the principles of the Copyright Act. First, Xerox is the author of the preexisting works and, therefore, copyright protection was extended as soon as the versions of the software and manuals were "fixed in any tangible medium of expression" without regard to registration. See 17 U.S.C. § 102; Altai, 775 F.Supp. at 556. Second, the Copyright Act does not require separate registration of each and every component part of a copyrighted work particularly where the author of the derivative work is the uncontested author of each of the component parts. See id.
CSU maintains that Xerox is barred from bringing its copyright infringement counterclaims because Xerox has not come forward with the registrations covering the preexisting materials from which the registered upgrades were derived. As noted above, Xerox does not have to produce registrations of the preexisting works if it is the owner of those works. Xerox has presented the copyright certificates of registration, which state that Xerox is the author of the entire work. The copyright registrations are prima facie evidence of the validity of this fact. See 17 U.S.C. § 410(c); Novelty Textile Mills, Inc. v. Joan Fabrics Corp., 558 F.2d 1090, 1092 n. 1 (2d Cir.1977). CSU has not offered any evidence to the contrary. Xerox's registration of the derivative works is sufficient to allow an infringement claim based on copying of material, either newly added or contained in the underlying work. See Altai, 775 F.Supp. at 555-57; Howard v. Sterchi, 725 F.Supp. 1572, 1574 (N.D.Ga.1989) ("Perhaps a prudent author might obtain independent registrations for her derivative works in addition to a registration for the compilation containing them, but such a requirement is not mandated by the Act."), aff'd, 974 F.2d 1272 (11th Cir.1992); Richmond Homes Mgmt., Inc. v. Raintree, Inc., 862 F.Supp. 1517, 1525 (W.D.Va.1994) ("Where the same creator owns both the original and derivative copyrights, the only sound interpretation of the Copyright Act is that the derivative work carries forward all preexisting copyrights in the original work."), aff'd in part and vacated in part on other grounds, 66 F.3d 316 (4th Cir.1995) (reversing because plaintiff presented insufficient evidence to establish ownership of the preexisting copyright); 2 Nimmer *1474 On Copyright § 7.16[b][2] at 7-169 (1996). Thus, the court finds that Xerox has met the jurisdictional prerequisites to its copyright infringement claim against CSU.

B. Xerox's Ownership Of Valid Copyrights.

CSU contends that Xerox has failed to prove that its diagnostic software and manuals contain materials that are protected by copyright law. Section 410(c) of the copyright statute provides that certificates of registration constitute prima facie evidence that the copyrights are valid. See 17 U.S.C. § 410(c); Autoskill, 994 F.2d at 1487. This section creates a rebuttable presumption of the copyright holder's originality and that the subject matter of the work is copyrightable. See Harris Mkt. Research v. Marshall Mktg. & Communications. Inc., 948 F.2d 1518, 1525 (10th Cir.1991) ("Evidence of the certificate [of copyright registration] shifted the burden of proof to [the alleged infringer] to dispute the validity of the copyright."); Donald Frederick Evans & Assocs., Inc. v. Continental Homes, Inc., 785 F.2d 897, 903 (11th Cir.1986) (copyright registration certificate constitutes prima facie evidence on the issues of originality and protectable material); 3 Nimmer on Copyright § 13.01[A] at 13-7 (same).
CSU attempts to rebut the presumption of the validity of Xerox's copyrights by arguing that many of the materials contained in the registered copyrights likely are unprotected under the copyright laws. In particular, CSU claims that Xerox's copyrights likely contain unprotected elements such as processes, facts, public domain material, merger material, and scenes a faire material. See Gates, 9 F.3d at 838, 17 U.S.C. § 102(b). CSU simply has offered no evidence to support its assertions and, therefore, has failed to rebut the statutory presumption of copyright validity. See Eisenman Chem. Co. v. NL Indus., Inc., 595 F.Supp. 141, 146-47 (D.C.Nev.1984) (granting summary judgment on infringement claim because "[a]lthough [the defendant] has urged that the [manual] lacks the requisite originality to be copyrightable, it has not shown that it could produce at trial substantial evidence in support of its position."); 3 Nimmer On Copyright § 12.11[b][1] at 12-166 (1996) ("Mere denial by the defendant unsupported by evidence is not sufficient to overcome the prima facie presumption of plaintiff's originality."); see also Harris, 948 F.2d at 1525 (affirming jury verdict of infringement based on presumption of copyright validity and lack of evidence presented by alleged infringer, "in particular expert testimony and analysis, to demonstrate invalidity of the copyright."). Thus, the court finds that Xerox owns valid copyrights for its software for the 5090 copier, and 4050, 4090, and 4650 printers, and that these copyrights contain material protected under the copyright laws.

C. Authorized Copying Of Computer Programs.

CSU claims that it is entitled to summary judgment on Count II of Xerox's counterclaim because Xerox cannot preclude the use of its software in the operation or service of its machines. This court previously found that "transferring a computer program from a storage device to a computer's RAM constitutes a copy for purposes of copyright law." In re Indep. Serv. Orgs. Antitrust Litig., 910 F.Supp. 1537, 1541 (D.Kan.1995). The copyright statute provides that
[i]t is not an infringement for the owner of a copy of a computer program to make or authorize the making of another copy or adaptation of that computer program provided: (1) that such a new copy or adaptation is created as an essential step in the utilization of the computer program in conjunction with a machine and that it is used in no other manner ....
17 U.S.C. § 117(a). The legislative history of this provision is as follows:
Because the placement of a work into a computer is the preparation of a copy, the law should provide that persons in rightful possession of copies of programs be able to use them freely without fear of exposure to copyright liability. obviously, creators, lessors, licensors, and vendors of copies of programs intend that they be used by their customers, so that rightful users would but rarely need a legal shield against potential *1475 copyright problems. It is easy to imagine, however, a situation in which the copyright owner might desire, for good reason or none at all, to force a lawful owner or possessor of a copy to stop using a particular program. One who rightfully possesses a copy of a program, therefore, should be provided with a legal right to copy it to that extent which will permit its use by that possessor.

Final Report of the National Commission on New Technological Uses of Copyrighted Works, 13 (1978) (emphasis added); see H.R.Rep. No. 96-1307, Part I, 96th Cong.2d Sess. 23 (1980) U.S.Code Cong. & Admin.News 6460, 6482; Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1252 (3d Cir.1983) (considers CONTU Report "as accepted by Congress since Congress wrote into law the majority's recommendations almost verbatim"); 2 Nimmer on Copyright § 8.08[B][1] at 8-115 (1996).
In order to take advantage of the above exception to the copyright laws, CSU must establish that (1) it was in "rightful possession" of Xerox's diagnostic software and (2) its copying of Xerox's diagnostic software was an "essential step" to the use of the software. As to the first element, CSU bears the burden of establishing it had rightful possession of the diagnostic software. See American Int'l Pictures, Inc. v. Foreman, 576 F.2d 661, 665 (5th Cir.1978) ("[B]ecause copyright law favors the rights of the copyright holder, the person claiming authority to copy or vend generally must show that his authority to do so flows from the copyright holder."); Allen-Myland v. International Bus. Machs. Corp., 746 F.Supp. 520, 535-36 (E.D.Pa.1990) (the alleged infringer bears the burden of establishing that section 117 applies). As to the second element, the only copying by CSU which could be termed an "essential step to use" is CSU's reproduction of diagnostic software from a lawfully obtained disk into the RAM of the copier or printer. CSU's copying and distribution of floppy disks containing Xerox's diagnostic software is not within the scope of the limited exception of section 117. See ISC-Bunker Ramo Corp. v. Altech, Inc., 765 F.Supp. 1310, 1332 (N.D.Ill.1990) (making multiple copies and using that software on other people's machines falls outside the scope of section 117); Allen-Myland, 746 F.Supp. at 536 (making copies to accumulate a back-up library or making copies for reconfigured systems is beyond the scope of section 117).
Xerox loaded operator and diagnostic software on the 5090 copier and 4050/4090 printers before 1992 to those customers who purchased the equipment. CSU contends that it is a lawful owner of Xerox's software as a subsequent purchaser of the equipment. If CSU was in lawful possession of the software, then its copying from the lawfully obtained disk into the RAM of the copier or printer may be protected under section 117. CSU claims that at least some of the 5090s, 4050s, and 4090s, which it services now, were sold initially by Xerox before 1992 and, therefore, CSU obtained the software from a lawful owner. On the other hand, Xerox has presented evidence that CSU has obtained copyrighted software upgrade disks from unlicensed sources by obtaining such disks from current and former Xerox service technicians, as well as other unauthorized sources. The parties have presented conflicting evidence regarding whether these various sources were in lawful possession of the software disks. Given the disputed factual record, the court cannot find as a matter of law for either party regarding whether CSU's copying of diagnostic software from a lawfully obtained disk into the RAM of the copier or printer was authorized by statute.

D. CSU's Copying Of Xerox's Copyrighted Materials.

As noted above, Xerox has established that it has valid copyrights and that the material contained in the registrations is protected under the copyright laws. Although CSU claims that some of its copying of Xerox's diagnostic software was authorized, see section I.C., supra, CSU has not offered any evidence to rebut Xerox's evidence that CSU copied Xerox's diagnostic software (contained on floppy disks) onto other floppy disks and onto the hard disk of 5090s, 4050s, and 4090s, both when CSU provided software upgrades to its customers and as part of CSU's refurbishment process. *1476 CSU effectively has admitted that it copied verbatim Xerox's diagnostic software and manuals. Given that CSU copied Xerox's entire copyrighted works, the court finds that protected materials under the Copyright Act necessarily were copied. See Triad Sys. Corp. v. Southeastern Express Co., 64 F.3d 1330, 1335 (9th Cir.1995) ("Because Southeastern's service activities involved copying entire programs, there is no doubt that protected elements of the software were copied."), cert. denied, ___ U.S. ___, 116 S.Ct. 1015, 134 L.Ed.2d 96 (1996); Data Gen. Corp. v. Grumman Sys. Support Corp., 825 F.Supp. 340, 355-56 (D.Mass.1993) (no analysis of the source code to determine copyright validity was necessary where defendant did not rebut the evidence of copyright validity and copied the entire copyrighted work), aff'd, 36 F.3d 1147 (1st Cir.1994).
Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, the court finds that the following facts exist without substantial controversy and thus will be deemed established at trial of this action:
CSU has infringed Xerox's valid registered copyrights for its operator and service manuals, its diagnostic software for the 5090 copier, and its diagnostic software for the 4050, 4090, and 4650 printers.
The above factual findings are subject to CSU's defenses to be presented at trial.

II. Xerox's Conversion Counterclaim.
Both CSU and Xerox have moved for summary judgment on Xerox's conversion counterclaim regarding Xerox's software and manuals. Conversion is established by showing an "unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another." Moore v. State Bank of Burden, 240 Kan. 382, 386, 729 P.2d 1205, 1210 (1986), cert. denied, 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987). Use of property belonging to another is the "exercise of the right of ownership." Horne v. Oller, 5 Kan.App.2d 263, 267, 615 P.2d 791, 794 (1980) (citation omitted). If the "possession of property is lawful at the outset, conversion can only occur when the possessor refuses an owner's demand for return of the property." Judson Bldg. Co. v. First Nat'l Bank of Longview, 587 F.Supp. 852, 856 (E.D.Tex.1984) (citing Norris v. Bovina Feeders, Inc., 492 F.2d 502 (5th Cir.1974)).
As noted above, with respect to Xerox's copyright infringement claim, neither party has presented sufficient evidence to establish whether CSU's possession of Xerox's copyrighted software upgrade disks was lawful at the outset. The parties also have presented conflicting evidence regarding whether CSU was in lawful possession of Xerox's service manuals. These factual disputes are closely intertwined with the factual dispute of when Xerox demanded return of its software disks and service manuals. Given these disputed factual issues, the court will deny both parties' motions for summary judgment on Xerox's conversion counterclaim.

III. CSU's Copyright Misuse Affirmative Defense.
CSU claims that Xerox misused its copyrights by attempting to use its copyrights for certain copier and printer parts to create or maintain a monopoly in the copier and printer service market. In particular, CSU claims that Xerox has attempted to suppress competition in the service market by (1) refusing to license its copyrighted products to ISOs or setting the license fee at an unreasonably high price, (2) using unreasonable and anticompetitive license terms for its copyrighted software, and (3) using its assertion of intellectual property rights, including its counterclaim for copyright infringement in the instant action. These allegations mirror in large part CSU's defense of patent misuse. The court accordingly incorporates by reference its discussion of CSU's patent misuse affirmative defense and antitrust claims in the court's March 19, 1997, Memorandum and Order.
Although the Supreme Court has not explicitly addressed the issue, a number of courts have recognized a copyright misuse defense. See, e.g., DSC Communications Corp. v. DGI Techs., Inc., 81 F.3d 597, 601 (5th Cir.1996) (concurring in the Fourth Circuit's characterization of the copyright misuse defense); Data Gen. Corp. v. Grumman *1477 Sys. Support Corp., 36 F.3d 1147, 1187 (1st Cir.1994); Lasercomb Am., Inc. v. Reynolds, 911 F.2d 970, 973-77 (4th Cir.1990). Very few courts, however, have found that the copyright misuse defense could be sustained on the facts of the particular case. See PRC Realty Sys. v. National Assoc. of Realtors, 972 F.2d 341, 1992 WL 183682 at *11-12 (4th Cir.1992) (finding misuse); Lasercomb, 911 F.2d at 977-79 (same); Tamburo v. Calvin, 1995 WL 121539 at *7, No. 94-C-5206 (N.D.Ill. Mar. 17, 1995) (same); qad. inc. v. ALN Assocs., Inc., 770 F.Supp. 1261, 1267-71 (N.D.Ill.1991) (same), aff'd, 974 F.2d 834 (7th Cir.1992).
The Tenth Circuit has not addressed directly whether a copyright misuse defense exists. In Edward B. Marks Music Corp. v. Colorado Magnetics, Inc., 497 F.2d 285, 290 (10th Cir.1974), cert. denied, 419 U.S. 1120, 95 S.Ct. 801, 42 L.Ed.2d 819 (1975), the court assumed "arguendo that an antitrust violation is a defense in a copyright infringement action," but found that the facts of that case did not support a finding of an antitrust violation. In Rural Tel. Serv. Co., Inc. v. Feist Publications, Inc., 663 F.Supp. 214, 220 (D.Kan.1987), Judge Rogers of this court found that "antitrust violations do not constitute a defense to copyright infringement." The Tenth Circuit affirmed without a published opinion. 916 F.2d 718 (10th Cir.1990). The Supreme Court reversed on other grounds. 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Given the significant development in the law regarding copyright misuse since the time of the district court's opinion in Feist, this court finds that the case has little precedential value.
We recognize that the rationale and policies behind the patent misuse defense apply for the most part to the copyright misuse defense. See Atari, 975 F.2d at 846; Lasercomb, 911 F.2d at 976 (citing United States v. Loew's, Inc., 371 U.S. 38, 44-51, 83 S.Ct. 97, 101-05, 9 L.Ed.2d 11 (1962) and United States v. Paramount Pictures, Inc., 334 U.S. 131, 157-59, 68 S.Ct. 915, 929-30, 92 L.Ed. 1260 (1948)). Xerox does not contest the general proposition that a copyright misuse defense exists. We are of the view that such a defense is viable based primarily on the similar policies behind the patent and copyright laws. An alleged infringer can establish copyright misuse by showing either that (1) the defendant violated the antitrust laws, or (2) the defendant illegally extended its monopoly beyond the scope of the copyright or violated the public policies underlying the copyright laws. See Lasercomb, 911 F.2d at 978; Broadcast Music, Inc. v. Hampton Beach Casino Ballroom, No. 94-248-B, 1995 WL 803576, at *5 (D.N.H.1995).
Xerox contends that its actions cannot constitute misuse as a matter of law because it has an absolute right to refuse to license or sell its copyrighted works to its competitors, regardless of its intent or the competitive effect on any market. The crux of CSU's misuse defense, however, is that Xerox has unlawfully extended the scope of its copyrights beyond their intended scope to erect an artificial barrier to entry in the service market. See Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 479 n. 29, 112 S.Ct. 2072, 2089 n. 29, 119 L.Ed.2d 265 (1992) (an inherent monopoly such as those created by patents and copyrights may not be used to leverage the monopolist's power in order to acquire monopoly power in a separate market); see also Image Technical Serv., Inc. v. Eastman Kodak Co., 903 F.2d 612, 620 (9th Cir.1990) (A monopolist may not refuse to deal with a competitor in an attempt to impede competition or deny an essential facility to a customer who is also a competitor, absent legitimate business justifications). The two critical factual issues for resolving CSU's misuse defense are the scope of Xerox's copyrights and whether there are separate markets for parts and service. Xerox has not established that its patents and copyrights for parts, diagnostic software, and manuals allow Xerox to exclude competitors in the service market.[1] On the other hand, CSU has presented sufficient *1478 evidence at this point to establish that there are separate markets for parts (including diagnostic software) and service and that service of copiers and printers was not within the scope of Xerox's copyrights.
The court finds that CSU's factual support for its copyright misuse defense is sufficient to withstand Xerox's motion for summary judgment. In addition to Xerox's conduct discussed with respect to CSU's patent misuse defense, CSU has presented evidence that Xerox unbundled its diagnostic software from its operating system software and refused to license diagnostic software to ISOs specifically as a tool to defeat ISO competition in the copier and printer service market. Assuming that there are separate markets for parts and service and that the scope of Xerox's copyrights was for the parts market only, there is sufficient evidence for a jury to find that Xerox misused it copyrights by expanding the scope of its copyrights beyond the parts market into the service market. The court accordingly denies the parties' cross-motions for summary judgment.

IV. CSU's Statute of Limitations And Laches Defenses.
Xerox filed its copyright infringement counterclaims relating to 5090 software in November of 1994, and its infringement counterclaims relating to manuals and 4050/4090 software in October of 1995.[2] Xerox seeks to recover damages for CSU's copying of manuals and 4050/4090 software before October 1992. Xerox claims that it is entitled to seek damages before October 1992 because (1) CSU's infringement of Xerox's copyrighted manuals and 4050/4090 software was a continuing wrong and thus the statute of limitations did not begin to run until the wrong was over and done with, and (2) Xerox was not on actual or inquiry notice of CSU's infringement of manuals or 4050/4090 software until shortly before it filed its infringement counterclaims in the instant action.[3]
A civil action for copyright infringement must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). As a general rule, "[i]n a case of continuing copyright infringements an action may be brought for all acts which accrued within the three years preceding the filing of the suit." Hoey v. Dexel Sys. Corp., 716 F.Supp. 222, 223 (E.D.Va.1989).
Xerox has not established that the continuing infringement theory is applicable to the facts of this case. In Taylor v. Meirick, 712 F.2d 1112 (7th Cir.1983), the court held that when the final act of a continuing wrong occurs within the three-year statutory period, the plaintiff could sue for damages for the entire duration of the alleged violation. Id. at 1119. In Taylor, the court found that the defendant's copying of plaintiff's maps and later sales of the infringing copies by the defendant and his dealers was a "continuing wrong." Id. Based on the present factual record, we are not convinced that the continuing wrong theory is applicable in this case.
Courts generally have not extended the continuing wrong theory beyond the facts of Taylor and, in many cases, rejected the theory as a matter of law in the copyright infringement context. See Daboub v. Gibbons, 42 F.3d 285, 291 (5th Cir.1995); Roley v. New World Pictures, Ltd., 19 F.3d 479, 480-81 (9th Cir.1994); Kregos v. Associated Press, 3 F.3d 656, 662 (2d Cir.1993), cert. denied, 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994); Hoste v. Radio Corp. of Am., 654 F.2d 11, 11 (6th Cir.1981); Hoey, 716 F.Supp. at 223; see also 3 Nimmer On Copyright § 12.05 at 12-110 ("The prevailing view is therefore that the statute of limitations bars recovery on any damage claim that accrued over three years prior to filing of suit.").
*1479 Xerox also seeks to toll the statute of limitations until it actually discovered or reasonably should have discovered CSU's infringement of its copyrights. See Industrial Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 969 (10th Cir. 1994); Stone v. Williams, 970 F.2d 1043, 1048 (2d Cir.1992), cert. denied, 508 U.S. 906, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993). CSU has presented evidence that Xerox was on inquiry notice of CSU's infringement of the diagnostic software for the 4050 and 4090 printers by 1991. CSU also claims that Xerox was on inquiry notice of CSU's infringement of Xerox manuals by April 1989, when Xerox cut off CSU's supply of service documentation. On the other hand, Xerox has presented evidence that it did not know of CSU's copying of diagnostic software or manuals until shortly before it filed its infringement counterclaims in the instant action. Based on the disputed factual record of when Xerox knew or reasonably should have known of CSU's copying of diagnostic software and manuals, CSU's motion for summary judgment is denied.
CSU also claims that Xerox's infringement counterclaims are barred as a matter of law by the doctrine of laches. To establish its defense of laches, CSU must establish that (1) Xerox inexcusably delayed in instituting its infringement counterclaims and (2) CSU was prejudiced by Xerox's delay. Brunswick Corp. v. Spinit Reel Co., 832 F.2d 513, 523 (10th Cir.1987). As noted above, there are genuine issues of material fact as to when Xerox knew or should have known of CSU's copying of diagnostic software and service manuals. The court accordingly cannot decide CSU's laches defense as a matter of law.
IT IS THEREFORE ORDERED that defendant's motion for summary judgment on its copyright infringement and conversion counterclaims (Doc. # 374) is denied.
IT IS FURTHER ORDERED that plaintiff's cross-motion for summary judgment on Xerox's copyright infringement and conversion counterclaims (Doc. # 441) is denied.
NOTES
[1] This court previously recognized that Xerox's contention that its patents and copyrights necessarily extend to the copier and printer service market cannot be precluded as a matter of law. See March 19, 1997 Memorandum and Order at 16 n. 4; March 12, 1997 Memorandum and Order regarding CSU's motion for summary judgment on Xerox's free riding defense at 5-7.
[2] CSU apparently concedes that Xerox's claims for infringement of its copyrights in 5090 diagnostic software are not barred by the statute of limitations. CSU did not start servicing 5090 copiers until April or October 1992, less than three years before Xerox filed its infringement counterclaim relating to 5090 software.
[3] CSU also claims that Xerox should be estopped from denying its laches and statute of limitations defenses because of Xerox's discovery conduct. The court will consider this issue with respect to CSU's motion for imposition of discovery sanctions against Xerox filed March 13, 1997.